DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant James Woods Jr. has appealed from his convictions of possession of cocaine and illegal use of a minor in nudity-oriented material or performance and his subsequent sentencing imposed by the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Defendant-Appellant James Woods Jr. was indicted on one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the second degree; one count of possession of marijuana, in violation of R.C. 2925.11, a minor misdemeanor; one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a felony of the fifth degree; one count of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a fourth degree misdemeanor; and one count of illegal use of a minor in nudity-oriented material or performance, in violation of R.C. 2907.323(A)(3), a felony of the fifth degree. Appellant entered "not guilty" pleas on all counts in the indictment. The State filed a supplemental indictment against Appellant for one count of illegal use of a minor in nudity-oriented material or performance, in violation of R.C.2907.323(A)(1), a felony of the second degree. Appellant entered a "not guilty" plea to the sole count in the supplemental indictment.
 {¶ 3} Appellant filed a motion to suppress "certain evidence obtained illegally" in his case. Appellant argued that photographs seized during the execution of the search warrant at his residence should be suppressed because they were not listed in the affidavit or search warrant and the incriminating nature of the photos was not immediately apparent. The trial court denied Appellant's motion to suppress the photographs.
 {¶ 4} Prior to trial, the State requested and the trial court ordered that the charges of possession of marijuana, trafficking in cocaine and illegal use or possession of drug paraphernalia be dismissed. A jury trial commenced on June 28, 2004 and the following day the jury found Appellant guilty of one count of possession of cocaine and two counts of illegal use of a minor in nudity-oriented material or performance. Appellant was sentenced to four years on his possession of cocaine conviction, one year on his fifth degree felony illegal use of a minor in nudity-oriented material or performance conviction, and two years on his second degree felony illegal use of a minor in nudity-oriented material or performance conviction. All sentences were to be served concurrently. Appellant was also designated a sexually oriented offender.
 {¶ 5} Appellant has appealed his convictions and sentencing, asserting four assignments of error.
 II Assignment of Error Number One
"Insufficient evidence was presented by the state to warrant a conviction."
 {¶ 6} In his first assignment of error, Appellant has argued that his conviction for illegal use of a minor in nudity-oriented material or performance was not supported by sufficient evidence. Specifically, Appellant has argued that the State presented no evidence of a lack of consent or proper purpose under R.C. 2907.323(A)(1) and that the State failed to demonstrate that R.C. 2907.323(A)(3)(a) or (b) did not apply. Appellant has also asserted that his conviction was not supported by sufficient evidence because the photographs are not lewd and they do not show a graphic focus on genitals.[1] We disagree.
 {¶ 7} "[T]he test for sufficiency requires a determination of whether the state has met its burden of production at trial[.]" State v. Gulley
(Mar. 15, 2000), 9th Dist. No. 19600, at 3, citing State v. Thompkins
(1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 8} Appellant has argued that his conviction for illegal use of a minor in nudity-oriented material or performance was based on insufficient evidence. The State has responded that Appellant's reliance on subsections (a) and (b) of R.C. 2907.323(A)(3) is misplaced because those subsections are affirmative defenses, not elements of the crime, and therefore, it was Appellant's responsibility to establish them. The State has also asserted that there was ample evidence for the jury to find of the photographs lewd.
 {¶ 9} Pursuant to R.C. 2907.323:
"(A) No person shall do any of the following:
"(1) Photograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity[.]
"* * *
"(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity[.]"
 {¶ 10} During the trial, testimony revealed that the Akron Police Department ("APD") initiated an investigation of Appellant for drug activity based on information from confidential informants and citizen complaints. After conducting a controlled drug buy at Appellant's residence, Detective Tim Harvey of the APD obtained a search warrant for the residence. When the APD executed the search warrant, several other people were in the residence and each person was handcuffed and identified.
 {¶ 11} Detective Chris Carney of the APD testified to the following for the State. While searching a bedroom of the residence, he found mail with Appellant's name and address on it. Det. Carney noticed an envelope with photographs and looked through it because "you can conceal narcotics in the smallest possible envelopes[.]" Det. Carney found photographs of a nude female in the envelope and recognized the female in the picture as being the 16 year-old girl in the house at the time of the search. Det. Carney provided the following description of the pictures:
"the one picture there's the female looking down and she's topless * * *, she has no bra on; she has a pair of underwear on, her breasts are exposed. The other picture is half of her where you can just see her breasts and she has some underwear on, but you can see her bikini line."
From the pictures, Det. Carney was able to determine that they were taken in Appellant's house. Det. Carney alerted the sergeant on scene about the photographs because he knew the girl in them was only 16 years old.
 {¶ 12} Sergeant Jason Malick of the APD testified for the State and testified to the following. Sgt. Malick was approached by Det. Carney during the execution of the warrant because Det. Carney discovered some nude photographs in Appellant's bedroom of the juvenile female that was in the house. Both the juvenile female and her mother identified the juvenile as the female in the photographs. Sgt. Malick asked Appellant about the photographs and he said they were of his girlfriend, the juvenile female, and that she had been living at his house for approximately two weeks.
 {¶ 13} On cross-examination, Sgt. Malick testified to the following. The juvenile female and her mother confirmed that the girl had been living with Appellant. The girl's mother did not express any problems with the girl living with Appellant.
 {¶ 14} Anita Lewis ("Lewis") testified for the State and testified to the following. Her daughter, the juvenile female at Appellant's house, never lived with him. Lewis knew that her daughter dated Appellant. When Lewis was shown the two photographs discovered in Appellant's bedroom, she was able to identify her daughter in one of them, but not the one where the subject's face was out of the picture.
 {¶ 15} The juvenile female ("A.L.") testified next for the State and testified to the following. She was 16 years old and Appellant was her boyfriend for approximately six or seven months. A.L. never lived with Appellant, but she did stay over night at his house. Appellant did take photographs of A.L. when she stayed at his house when they were "playing." The photographs were not posed, it was "like he caught [A.L.] off guard." A.L. reviewed the photographs discovered during the search and identified herself as the person in the photographs and that Appellant took the pictures.
 {¶ 16} Detective Jerry Gachett of the APD's juvenile division testified for the State and testified to the following. As part of his investigation into the photographs, he interviewed A.L., Lewis, and Appellant. Appellant told Det. Gachett that he and A.L. "started going together" soon after they met. A.L. had a birthday party celebrating her 16th birthday at Appellant's house. Appellant admitted taking the photographs of A.L. seized during the search.
 {¶ 17} Appellant testified on his own behalf and testified to the following. Appellant denied making any admissions to any members of the APD and denied being asked any questions by members of the APD. Appellant did not know A.L.'s age, but he knew she was in school. Appellant did not remember taking the photographs of A.L. at issue, but he did remember taking a picture of A.L. where she was topless, but wearing panties. Appellant accused two APD detectives of lying during their testimony.
 {¶ 18} Based on the foregoing and considering the evidence in a light most favorable to the State, we find that the State met its burden of production. Given the trial testimony, any rational trier of fact could have found the essential elements of illegal use of a minor in nudity-oriented material or performance beyond a reasonable doubt. Testimony established that A.L., a minor, was the nude female in the photographs and that Appellant took and possessed the photographs. We are not persuaded by Appellant's arguments that his convictions were unsupported because the State failed to show lack of consent or lack of proper purpose. Specifically, we find that the proper purpose section of the statute Appellant cited is an affirmative defense he was required to prove, not an element that the State must establish. State v. Young,37 Ohio St.3d 249, 255-56, reversed on other grounds (1990), 495 U.S. 103,110 S.Ct. 1691, 109 L.Ed.2d 98. We also disagree with Appellant's assertion that there was insufficient evidence to establish lewdness; we find that any rational trier of fact could have found the photographs of 16 year-old A.L.'s naked breasts and bikini line with visible pubic hair lewd. Accordingly, Appellant's convictions for illegal use of a minor in nudity-oriented material or performance were supported by sufficient evidence.
 {¶ 19} Appellant's first assignment of error is not well taken.
 Assignment of Error Number Two
"The verdict was against the manifest weight of the evidence."
 {¶ 20} In his second assignment of error, Appellant has argued that his possession of cocaine conviction was against the manifest weight of the evidence. Specifically, Appellant has argued that another resident of his home testified that the cocaine belonged to him, not Appellant; therefore, the jury clearly lost its way in disregarding that testimony and convicting him.[2] We disagree.
 {¶ 21} In reviewing whether a conviction is against the manifest weight of the evidence, this Court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten
(1986), 33 Ohio App.3d 339, 340.
 {¶ 22} Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. Id.
 {¶ 23} Appellant has argued that his conviction for possession of cocaine was against the manifest weight of the evidence. The State has responded that the jury was not obligated to believe every witness and their decision was supported by a manifest weight of the evidence.
 {¶ 24} Pursuant to R.C. 2925.11, "(A) No person shall knowingly obtain, possess, or use a controlled substance." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Furthermore, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." Id.
 {¶ 25} Possession of drugs can be either actual or constructive. SeeState v. Haynes (1971), 25 Ohio St.2d 264. The Ohio Supreme Court has held that a person has constructive possession of a thing or substance when he is able to exercise dominion or control over it. State v. Wolery
(1976), 46 Ohio St.2d 316, 329, certiorari denied (1976), 429 U.S. 932,97 S.Ct. 339, 50 L.Ed.2d 301. Furthermore, drugs that are found in plain view and are in close proximity to a defendant can establish constructive possession of those drugs. See State v. Pruitt (1984), 18 Ohio App.3d 50,58; see, also, State v. Boyd (1989), 63 Ohio App.3d 790. Circumstantial evidence alone is sufficient to support the element of constructive possession. Jenks, 61 Ohio St.3d at 272-273.
 {¶ 26} During the trial, Det. Carney testified to the following. He witnessed Appellant dump "something" into a trash can as the police entered his house. Further investigation revealed that Appellant dumped a plate and some crack cocaine in the trash can. Det. Carney discovered a bag of marijuana and $110 on Appellant's person. Finding drugs and money on a person signifies drug trafficking to Det. Carney. Det. Carney also found a digital scale in Appellant's bedroom. Det. Carney did not know if Levell Woods ("Levell"), Appellant's nephew, was in the house at the time of the search, but he did know that no one named Levell claimed to live in the house the day of the search.
 {¶ 27} Detective Donnie Williams of the APD testified for the State and testified to the following. When Det. Williams entered Appellant's residence he witnessed Appellant throw something to the floor of his bedroom. After securing Appellant, Det. Williams returned to the bedroom and found a small plate outside the trashcan and four to five grams of crack cocaine and a razor blade in the trashcan. He explained that a razor blade is commonly used with narcotics "[t]o cut the crack cocaine from the larger chunk that's usually cooked into smaller pieces to sell." No one else was near the trashcan when Det. Williams entered the house. Det. Williams searched the bedroom closet and found a coat hanging on the door. Inside the coat, he discovered 14 grams of crack cocaine and over $820. No one in Appellant's home claimed ownership of the drugs during the search.
 {¶ 28} On cross-examination, Det. Williams testified to the following. He did not take the coat into evidence and does not know the size of the coat. Det. Williams presumed the coat was Appellant's because Appellant told the APD it was his bedroom and the coat was found in the bedroom closet. Appellant told the APD that he lived in the house alone and that he had been living there for about two months.
 {¶ 29} Detective Tim Harvey of the APD testified to the following for the State. After the search was complete, Appellant was transported to the police station and advised of his Constitutional rights. Det. Harvey asked Appellant if he was selling crack because he was a user and Appellant answered "I sell dope because I use dope." Levell who was present during the execution of the warrant did not make any statements to Det. Harvey during the search.
 {¶ 30} On cross-examination, Det. Harvey testified to the following. On the street "dope" means cocaine, not marijuana. He did not know what Appellant meant when he referenced "dope." All of the clothes in the master bedroom appeared to be Appellant's size.
 {¶ 31} Levell, Appellant's 19 year-old nephew, testified first for Appellant and testified to the following. Levell was staying with Appellant at the time of the search warrant. Levell was at Appellant's residence when the APD executed their warrant. Levell saw the APD coming towards the house and told Appellant to get the plate off of the dresser. Levell put the plate, with drugs on it, on the dresser. Appellant went to the plate to dispose of the drugs, but the APD entered the house just as he was throwing it away and "[t]hey caught him." Appellant did not know the plate was in there because he had just returned from buying a dog. Levell also put the drugs in the coat in Appellant's bedroom closet. Levell had not told anyone about the drugs before the APD arrived. Levell told his mother about the drugs about two months after the search. Levell came forward because he didn't want his uncle "to take the fall for something he didn't do."
 {¶ 32} On cross-examination, Levell testified to the following. Levell knew the APD found crack cocaine and large sums of money during the search. He saw Appellant get arrested, but he did not say anything to the APD about the drugs being his. Levell was arrested after the search because there was a warrant for his arrest for leaving a drug treatment facility without permission. Levell was in the drug treatment facility for a drug possession conviction. Levell never told the APD that the drugs were his.
 {¶ 33} Beverly Prince ("Prince"), Levell's mother and Appellant's sister, testified to the following for Appellant. Prince was in Appellant's house at the time of the search. Levell told her the drugs belonged to him "when everything had went down[.]" Prince had given Levell about $800 to "put up" for her until Christmas so she would not spend it.
 {¶ 34} Appellant testified on his own behalf to the following. On the day of the search, Appellant and A.L. bought a dog in Kent for $200 and returned home around 8:00 p.m.[3] When Appellant arrived home, Levell, Prince, and another man were in his home. The APD arrived no more than a half an hour after Appellant got home. Levell, A.L. and another man all had belongings at Appellant's home. Appellant does not have a particular bedroom that he calls his own; people stay with him and "it wasn't no certain room for nobody." Appellant admitted to possessing and using marijuana as the APD entered his home. Appellant denied knowing there were drugs in the bedroom or in the coat in the closet. Appellant also denied knowing anything about the money in the coat. When the APD entered the home, Appellant heard Levell say "Get that off the dresser" and that is why Appellant went into the bedroom. The drugs Appellant disposed of were not his drugs.
 {¶ 35} Appellant admitted that his criminal record included convictions for breaking and entering and drugs, including cocaine possession, and that he had been to prison four times.
 {¶ 36} On cross-examination, Appellant testified to the following. Appellant admitted he had used crack cocaine in the past and had received treatment for a drug problem.
 {¶ 37} After careful review of the entire record, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, this Court cannot conclude that the jury clearly lost its way when it found Appellant guilty of possession of cocaine. The jury was in the best position to evaluate the credibility of witnesses and give proper weight to their testimony. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Although conflicting testimony was presented at trial, Appellant's conviction was not against the manifest weight of the evidence simply because the jury chose to believe the evidence offered by the prosecution. State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Furthermore, the jury as the fact finder was entitled to disbelieve Levell's testimony. See DeHass,
supra. The credible testimony of the APD detectives and sergeant established that Appellant committed the crime as charged.
 {¶ 38} Based on the foregoing, this Court cannot find that Appellant's cocaine possession conviction was against the manifest weight of the evidence.
 {¶ 39} Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three
"The court failed to follow sentencing guidelines and erred in imposing its's (sic) sentence."
 {¶ 40} In his third assignment of error, Appellant has argued that the trial court failed to follow the sentencing guidelines when it imposed a four year period of incarceration for his second degree felony possession of crack cocaine conviction. Specifically, Appellant has argued that the trial court's "rote recitation of the statute" and notations that Appellant had previously served a prison term and had prior felony convictions were not sufficient to support the imposed sentence. We disagree.
 {¶ 41} When reviewing a sentence on appeal, an appellate court "may increase, reduce, or otherwise modify a sentence" or it may vacate the sentence and remand the matter for resentencing. R.C. 2953.08(G)(2). Pursuant to R.C. 2953.08(G)(2):
"The appellate court's standard of review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
"(a) That the record does not support the sentencing court's findings under division [R.C. 2929.13(B) or (D)] * * *;
"(b) That the sentence is otherwise contrary to law." R.C 2953.08(G)(2).
Clear and convincing evidence is:
"`[T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.'" State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quoting Cross v. Ledford (1954), 161 Ohio St. 469.
 {¶ 42} Appellant has asserted that the trial court erred when it did not state the proper findings when it sentenced him beyond the minimum prison sentence for his conviction. The State has responded that the record at sentencing established that Appellant had previously served time in prison and that he had an extensive criminal record.
 {¶ 43} As previously noted, Appellant's four year term of incarceration was based on his conviction of possession of cocaine, a felony of the second degree.
 {¶ 44} Pursuant to R.C. 2929.14(A):
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender * * * and is not prohibited by [R.C. 2929.13(G)(1)] from imposing a prison term on the offender, the court shall impose a definite prison term that shall be one of the following:
"* * *
"(2) For a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years."
 {¶ 45} Pursuant to R.C. 2929.14(B):
"[I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense * * * unless one or more of the following applies:
"(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term." R.C.2929.14(B)(1). (Emphasis added).
 {¶ 46} Pursuant to R.C. 2929.14(B)(1), if a defendant has previously served a prison term the trial court need not impose the shortest prison sentence or make findings for why it declined to do so. See State v.Pruiett, 9th Dist. No. 21796, 2004-Ohio-3256, at ¶ 28. In the present case, Appellant admitted during his trial and at his sentencing that he had served several prison terms. Further, it is undisputed that the trial court found that Appellant had previously served terms of incarceration. Due to Appellant's admitted and recognized prior terms of incarceration, the trial court complied with the statutory requirements of R.C. 2929.14(B) and this Court finds that Appellant has failed to demonstrate by clear and convincing evidence that the trial court acted contrary to law when it imposed a sentence that exceeded the minimum prison term.
 {¶ 47} Based on the foregoing, Appellant's third assignment of error is not well taken.
 Assignment of Error Number Four
"The trial court erred by denying appellant's motion to suppress."
 {¶ 48} In his fourth assignment of error, Appellant has argued that the trial court erred in denying his motion to suppress the photographs. Specifically, Appellant has argued that the photographs seized during the search warrant were not listed on the warrant. Appellant has also argued that the plain view exception does not apply because the incriminating nature of the photographs was not immediately apparent to the officers. We disagree.
 {¶ 49} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quotingState v. Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v.Russell (1998), 127 Ohio App.3d 414, 416. (Italics sic).
 {¶ 50} "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." State v. Waddy (1992), 63 Ohio St.3d 424, 442, certiorari denied (1998), 523 U.S. 1010, 118 S.Ct. 1198, 140 L.Ed.2d 327, quotingCoolidge v. New Hampshire (1971), 403 U.S. 443, 466, 91 S.Ct. 2022,29 L.Ed.2d 564.
 {¶ 51} Appellant has argued that the trial court erred in denying his motion to suppress the photographs seized in the search of his home. The State has argued that the plain view doctrine supports the trial court's ruling on the motion to suppress.
 {¶ 52} A review of the suppression hearing transcript reveals the following. Det. Harvey testified for the State. After two undercover buys of cocaine from Appellant's residence, Det. Harvey obtained a search warrant for Appellant's residence. Det. Harvey executed the warrant and found six to seven people in the house. Everyone was placed in handcuffs and the police started gathering identification and other information from them. One of the people was a 16 yearold female.
 {¶ 53} Det. Carney testified next for the State. Det. Carney found photographs next to Appellant's bed on the nightstand. The photographs were in the envelope from the developer. Det. Carney looked through the photographs and recognized a nude female in the pictures as the 16 year-old that was currently handcuffed in the house. One picture showed the girl with no top on and the other showed her with just "panties on." Det. Carney notified his sergeant and his sergeant "followed up on the pictures by questioning [the girl] and her mother." Det. Carney testified that when executing a search warrant for drugs, drug paraphernalia or evidence of drug sales the police "search anything where drugs [could] be located." He testified that drugs could be in an envelope with pictures. Det. Carney continued his testimony that his drug dog did not alert to the area of the pictures and he indicated that he did not think there were drugs in that area. He was 99% sure that the picture showing no face, but a frontal view of a female with only panties on was a picture of the 16 year-old discovered in the house.
 {¶ 54} Sgt. Malick also testified for the State. Sgt. Malick was present during the execution of the search warrant and was presented with the photographs of the 16 year-old. The juvenile's mother was called prior to the discovery of the photographs. When she arrived on the scene Sgt. Malick showed her the photographs and she confirmed the pictures were of her daughter.
 {¶ 55} At the conclusion of the hearing and based on the "totality of the circumstances," the trial court denied Appellant's motion to suppress. The trial court found that the warrant "itself was broad enough" to have a thorough search that included looking in drawers. The trial court found "the fact that the child was in the house and the connection between the photographs and the child * * * [was] sufficient to give some substance to that issue." The trial court indicated it would have ruled differently had the juvenile not been in the house at the time of the search. The trial court determined that connecting the pictures and the presence of the juvenile "justifie[d] not suppressing the evidence." On May 25, 2004, the trial court issued a journal entry denying Appellant's motion to suppress.
 {¶ 56} We find that the initial intrusion leading to the photographs' discovery was lawful and it was immediately apparent that the photographs were incriminating. See Waddy, supra. It is undisputed that the APD was lawfully in Appellant's residence executing a search warrant for drugs, drug paraphernalia, and evidence of drug trafficking. While searching for said materials, the APD searched an envelope that could have easily contained the materials they were looking for. Instead, the APD found photographs of a nude female. The APD recognized the female in the photographs as the 16 year-old girl they had just encountered and identified in Appellant's residence. Based on the foregoing, we find that the seizure of the photographs was not a violation of Appellant's rights.
 {¶ 57} Appellant's fourth and final assignment of error lacks merit.
 III {¶ 58} Appellant's four assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Reader, J., Concur.
(Reader, J., retired, of the Fifth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] Although Appellant's assignment of error is a general insufficient evidence claim, the accompanying argument focuses solely on his convictions for illegal use of a minor in nudity-oriented material or performance. Accordingly, this Court only addresses insufficiency as it relates to those convictions.
[2] Although Appellant's assignment of error is a general manifest weight of the evidence claim, the accompanying argument focuses solely on his conviction for possession of cocaine. Accordingly, this Court only addresses manifest weight as it relates to that conviction.
[3] A.L. also testified that she and Appellant bought a dog the evening of the search.