OPINION
{¶ 1} Defendant-appellant, Phillip McDonald, appeals his convictions in the Clermont County Court of Common Pleas for multiple counts of illegal use of a minor in nudity-oriented material or performance, attempted use of a minor in nudity-oriented material or performance, voyeurism, and gross sexual imposition. We affirm the convictions.
 {¶ 2} During the early morning hours of September 2, 2007, police responded to a *Page 2 
call from a 15-year-old girl who claimed that McDonald pulled down her shirt to take a picture and was touching her while she was asleep. Though he was not arrested, the police questioned McDonald at the police station and searched his computer and digital cameras once he gave his consent for the police to do so. From the computer, the police seized three pictures taken of two additional minor females that showed McDoanld's hand pulling down the girls' shirts to expose their naked breasts, with a close-up of the nipple areas.
 {¶ 3} After the interview process was completed, but before he was arrested, McDonald consented to having the police take pictures of his hands in order to match them to those that appeared in the photographs. Soon after, McDonald was indicted on 12 counts and pled not guilty to the charges. McDonald waived his right to a jury trial and requested that his case be heard by the court. Before the bench trial was to begin, McDonald pled no contest to the facts and both he and the state submitted legal arguments regarding whether or not his actions constituted the crimes for which he was charged.
 {¶ 4} After ensuring that McDonald's plea was made knowingly, voluntarily, and intelligently, the court accepted his no contest plea. After considering the applicable legal arguments, the court found McDonald guilty on all 12 counts, sentenced him to a total aggregate sentence of over nine years, and classified McDonald as a tier two sex offender. It is from these convictions that McDonald now appeals, raising four assignments of error. For ease of discussion, we will discuss McDonald's assignments out of order and address the first and second together.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY UPON APPELLANT'S NO CONTEST PLEA AS THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUSTAIN SUCH FINDING." *Page 3 
 {¶ 7} Assignment of Error No. 2:
 {¶ 8} "THE INDICTMENT WAS DEFECTIVE UNDER CRIM.R. 7(B) AS IT FAILED TO CONTAIN THE CULPABLE MENTAL STATE AND THE COURT LACKED SUBJECT MATTER JURISDICTION TO CONVICT APPELLANT."
 {¶ 9} In these assignments of error, McDonald claims that the indictment charging him was deficient because it failed to list a requisite mental state, and such deficiency caused multiple errors that now call for the reversal of his convictions. This argument lacks merit.
 {¶ 10} McDonald argues that absent the mens rea in the indictment, the statement of facts, to which he admitted, was insufficient to establish the required elements of the crimes for which he was convicted. Because both assignments of error question the impact the missing mens rea had on the determination of McDonald's guilt or innocence, we will analyze them together.
 {¶ 11} McDonald asserts that State v. Smith, Pickaway App. No. 06CA7,2007-Ohio-502, is directly on point and stands for the proposition that his convictions must be vacated because the indictment that charged him failed to state the required mens rea. Based on Smith, McDonald argues that the court lacked subject matter jurisdiction to decide his case.
 {¶ 12} Crim. R. 12(C)(2) lists two exceptions to the general rule that a party must raise defective indictment issues prior to trial: failure to show jurisdiction in the court, or to charge an offense. Based on this rule, the court in Smith stated, "we hold that the failure to include the culpable mental state of recklessness in the indictment charging Smith with illegal use of a minor in nudity-oriented material, in violation of R.C. 2907.323(A)(1), rendered the indictment invalid. Thus, we conclude that the trial court lacked subject matter jurisdiction to try Smith on that charge." Id. at ¶ 30.
 {¶ 13} However, since Smith was decided, the Ohio Supreme Court has analyzed the applicability of Crim. R. 12(C)(2) and when an appellant may argue a defective indictment *Page 4 
claim for the first time on appeal. The Ohio Supreme Court's decision inState v. Colon, 118 Ohio St.3d 26, 2008-Ohio-1624 ("Colon I") and the court's clarification of that decision in State v. Colon,119 Ohio St.3d 204, 2008-Ohio-3749 ("Colon II"), specifically speak to a defective indictment and the impact the missing mens rea can have on a defendant's trial.
 {¶ 14} The court in Colon I cited Crim. R. 12(C)(2), as well as the exceptions listed therein, and concluded that "an indictment that omits the mens rea element of recklessness fails to charge the offense of robbery, and is therefore an exception to the general rule stated in Crim. R. 12(C)." 2008-Ohio-1624 at ¶ 37. The court further stated, "our conclusion that an indictment that omits an essential element fails to charge an offense is supported by case law * * *." Id. at ¶ 38. Therefore, rather than analyzing McDonald's indictment specific to the issue of subject matter jurisdiction, we will apply the law in ColonI and Colon II and review the impact the missing mens rea had on McDonald's indictment and subsequent convictions.
 {¶ 15} In Colon I, the court overturned Colon's convictions because the indictment that charged him failed to list a requisite mental state. The court concluded that the missing mental state led to structural errors so that Colon should have been permitted to challenge his defective indictment for the first time on appeal. Id.
 {¶ 16} In Colon II, however, the court emphasized that its holding inColon I was fact-specific and that a structural error does not automatically result any time the indictment fails to list the required mental state. Instead, the court reiterated the errors that occurred during Colon's indictment and trial which formed the basis for its reversal in Colon I, then stated that "in a defective-indictment case that does not result in multiple errors that are inextricably linked to the flawed indictment such as those that occurred in Colon I, structural-error analysis would not be appropriate." 119 Ohio St.3d 204
at ¶ 7.
 {¶ 17} The court then concluded its analysis by stressing that "applying structural-error analysis to a defective indictment is appropriate only in rare cases; such as Colon I, in which *Page 5 
multiple errors at the trial follow the defective indictment. * * * Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis." Id. at ¶ 8.
 {¶ 18} McDonald asserts that the indictment that charged him failed to list an applicable mental state so that his case is similar to ColonI. Counts one through four charged McDonald with illegal use of a minor in nudity-oriented material in violation of R.C. 2907.323(A)(1) which forbids a person from photographing "any minor who is not the person's child or ward in a state of nudity * * *." Because the statute fails to list a mens rea, but is not otherwise a strict liability offense, this court has previously held that the default reckless mental state applies. State v. Harrison, Madison App. No. CA2006-08-028,2007-Ohio-7078.
 {¶ 19} McDonald's indictment for these counts, though they parroted the corresponding statutory language, did not list recklessness as the appropriate mens rea. Additionally, the state does not contest that the indictment failed to list recklessness as the requisite mental state. We therefore agree with McDonald that his indictment on counts one through four was defective.
 {¶ 20} Nevertheless, plain error analysis is proper because the defective indictment did not result in multiple errors that were inextricably linked to the flawed indictment. McDonald failed to contest his defective indictment at any stage of the proceedings below. However, the fact that the indictment failed to list recklessness as the required mental state did not lead to structural errors that McDonald may now argue for the first time on appeal.
 {¶ 21} Unlike the defendant in Colon, McDonald chose to forgo a jury trial where the state would have had the burden to prove a set of facts that would constitute his guilt. Instead, McDonald avoided a trial by pleading no contest to the facts, as presented by the state, and by asking the judge to consider the questions of law as briefed by the parties. *Page 6 
 {¶ 22} During the state's recitation of the facts, it set forth the following: "McDonald photographed any minor who was not the Defendant's child or ward in a state of nudity, and the material was not possessed for a bonafide or proper purpose by a person having a proper interest in the material * * *. Specifically, Your Honor, the Defendant without a proper purpose and not being a person with the proper interest in the material took three photographs of two juvenile victims while they were sleeping without the consent of the parents. And these photographs depicted the minors in a state of nudity, specially exposed breasts."
 {¶ 23} Soon after the state concluded its recitation of the facts and circumstances surrounding the purported crimes, the court asked McDonald if he had "any disagreement with that statement as to the circumstances that forms the bases of these charges, or is there anything that you wish to add?" to which McDonald answered, "no, Sir."
 {¶ 24} Recently, the Second District Court of Appeals decidedState v. Easter, Montgomery App. No. 22487, 2008-Ohio-6038, in which the trial court heard testimony of a police officer before deciding whether or not to accept the defendant's Alford plea. The officer testified to the circumstances of the robbery for which Easter was charged and to what the investigation revealed regarding Easter's involvement. The Second District then concluded, "these facts certainly support the inference that Easter purposefully or knowingly threatened the immediate use of force against the store clerk [in violation of] R.C. 2901.22(A), (B). Either of these culpable mental states are sufficient to establish the default mens rea of recklessness, the element missing from the indictment against Easter. * * * If the indictment itself failed to completely charge robbery, the above-quoted testimony certainly completely made out the offense and would have supported a proper indictment for robbery." Id. at ¶ 25.
 {¶ 25} In the case at bar, and similar to Easter, through the no contest plea, the court *Page 7 
had ample facts before it to establish the charges against McDonald. The facts, as admitted to, would have also supported a proper indictment for illegal use of a minor in nudity-oriented material. McDonald admitted that he photographed the victims without a proper purpose and exposed their naked breasts when they could not consent to such touching. This conduct certainly constitutes a violation of R.C. 2907.323(A)(1). More importantly, by admitting these facts, McDonald acknowledged that he took the pictures on purpose, knowing that the victims were asleep. Both purposeful and knowing are stricter mens rea to prove than recklessness so that McDonald cannot now claim that his defective indictment caused structural errors allowing him to argue the deficiency for the first time on appeal. See State v. Ripperger, Butler App. No. CA2007-11-304, 2009-Ohio-925.
 {¶ 26} Instead, we will analyze the case at bar under a plain error analysis. According to Crim. R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error does not exist unless, but for the error, the outcome of the trial would have been different. State v.Waddell, 75 Ohio St.3d 163, 166, 1996-Ohio-100. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Haney, Clermont App. No. CA2005-07-068, 2006-Ohio-3899, ¶ 50, quotingState v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 27} After the plea hearing, the court allowed the state and McDonald to brief the legal issues presented in the case. Specifically, McDonald argued in his brief that he was not guilty because the pictures did not constitute lewd exhibitions. After considering the legal arguments, the court issued a decision regarding counts one through four and began its analysis by addressing the fact that recklessness was the applicable mental state.
 {¶ 28} The court specifically stated, "because R.C. 2907.323 does not specify any degree of culpability, the degree of culpability required to commit the offense is recklessness. *Page 8 
R.C. 2901.22(C) defines `recklessly' as follows * * *." The court then set out the definition of recklessness and later stated that "what remains for the court to consider is * * * whether the defendant recklessly photographed the minors." After analyzing the case, the court concluded that McDonald "recklessly took the subject photographs and attempted to take another such photograph."
 {¶ 29} Because the court understood that it had to decide whether McDonald acted recklessly before finding him guilty, it is patently obvious that the outcome of the proceedings would not have been different had the indictment listed recklessness as the requisite mental state. The court correctly analyzed McDonald's actions and found that he acted, at the very least, recklessly. Therefore, there was no plain error, and McDonald's first and second assignments of error are overruled.
 {¶ 30} Assignment of Error No. 4:
 {¶ 31} "THE INDICTMENT WAS DEFECTIVE UNDER CRIM.R. 7(B) AS IT FAILED TO CONTAIN THE CULPABLE MENTAL STATE AND THE COURT LACKED SUBJECT MATTER JURISDICTION TO CONVICT APPELLANT."
 {¶ 32} In his fourth assignment of error, McDonald claims that the indictment charging him with counts five through 12 was defective and caused structural errors that now warrant reversal of his convictions. We disagree.
 {¶ 33} Before Colon I or Colon II become applicable, the indictment which charges a defendant must be defective. Here, however, the indictment that charged McDonald with four counts of gross sexual imposition and four counts of voyeurism was not defective, as it clearly stated the requisite mental state.
 {¶ 34} Although McDonald asserts that the indictment failed to list recklessness as the mental state for counts five through 12, a review of the applicable statutes reveal that the state was bound to prove higher mental states than recklessness. *Page 9 
 {¶ 35} McDonald was charged with four counts of gross sexual imposition in violation of R.C. 2907.05(A)(5) which states, "no person shall have sexual contact with another * * * when any of the following applies: (5) the ability of the other person to resist or consent or the ability of one of the other persons to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable causeto believe that the ability to resist or consent of the other person or of one of the other persons is substantially impaired * * *." (Emphasis added.)
 {¶ 36} Therefore, the statutory language is clear that the state had the burden to show that McDonald acted knowingly during the commission of his crime. See State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707, ¶ 8
(citing Crim. R. 7[B] to demonstrate that an indictment may charge the crime "in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged").
 {¶ 37} The indictment that charged McDonald parroted the language of R.C. 2907.05(A)(5) and included the charge that he "knew or had reasonable cause to believe" that the victims did not have the ability to consent or resist the sexual contact. Specifically, the state charged McDonald with having sexual contact with the victims by touching their breasts while he knew that their ability to consent or resist was impaired because they were asleep.
 {¶ 38} Similarly, McDonald was charged with four counts of voyeurism in violation of R.C. 2907.08(D)[1] which states, "no person, for thepurpose of sexually arousing or gratifying the person's self, shall commit trespass or otherwise surreptitiously invade the privacy of another to photograph the other person in a state of nudity if the other person is a minor ***." *Page 10 
(Emphasis added.) McDonald's indictment specific to voyeurism also parroted the statutory language and charged McDonald with taking the pictures of the victims "for the purpose of sexually arousing or gratifying [him] self * * *."
 {¶ 39} Having found that the indictment included the requisite mental state for the crimes charged against McDonald, his indictment was not deficient as to counts five through 12, and the assignment of error claiming such is overruled.
 {¶ 40} Assignment of Error No. 3:
 {¶ 41} "THE TRIAL COURT ERRED IN ENTERING A FINDING OF GUILTY BASED UPON APPELLANT'S NO CONTEST PLEA."
 {¶ 42} In his third assignment of error, McDonald asserts that the evidence presented by the state was legally insufficient for the court to have convicted him of illegal use of a minor in nudity-oriented material. This argument lacks merit.
 {¶ 43} When reviewing the sufficiency of evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298. When addressing sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 44} According to R.C. 2907.323(A)(1), "no person shall do any of the following: photograph any minor who is not the person's child or ward in a state of nudity * * *." As it relates to the case at bar, nudity is defined as the "showing, representation, or depiction of *** a female breast with less than a full, opaque covering of any portion thereof below the top of the nipple * * *." R.C. 2907.01(H).
 {¶ 45} The Ohio Supreme Court interpreted R.C. 2907.323 to prohibit "the possession *Page 11 
or viewing of material or performance of a minor who is in the state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals * * *" State v. Young, (1998)37 Ohio St.3d 249, 252. The United States Supreme Court upheld the constitutionality of R.C. 2907.323 and approved of the Ohio Supreme Court's construction of the statute specific to the lewdness required to constitute a violation. See Osborne v. Ohio (1990), 495 U.S. 103, 114,110 S.Ct. 1691 (holding that the statute was not overbroad because "by limiting the statute's operation in this manner, the Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children").
 {¶ 46} McDonald first asserts that the evidence is insufficient because breasts are not genitals, therefore his photographs could not have involved a graphic focus on genitals. However, a close reading of the decision in Young demonstrates that the nudity need only constitute a lewd exhibition or involve graphic focus on the genitals. Additionally, in Osborne, the United States Supreme Court, when reviewing Ohio's R.C. 2907.323, stated that "the crucial question is whether the depiction is lewd, not whether the depiction happens to focus on the genitals or the buttocks." Osborne at fn.11.
 {¶ 47} While the Ohio Supreme Court has not analyzed a case under the auspices of R.C. 2907.323(A)(1) to determine that that a depiction that does not focus on genitals or the pubic area can nonetheless support a conviction based on the material's lewd nature, we are confident that Ohio law permits such an interpretation.
 {¶ 48} To support our analysis, various courts have affirmed convictions where the materials did not depict a specific focus on the victim's genitals or pubic area. See State v. Powell (Dec. 15, 2000), Montgomery App. Nos. 18095, 99-CR-631 (affirming conviction for a violation of R.C. 2907.323(A)(1) where the photograph depicted the victim's naked buttocks); State v. Ellis, Fairfield App. No. 02 CA 96, 2004-Ohio-610 (affirming conviction for a violation of R.C. 2907.323(A)(3) where photograph depicted the victim's naked breasts and showed *Page 12 
her with her jeans pulled down); and State v. Woods, Summit App. No. CA 22267, 2005-Ohio-2681 (affirming conviction for a violation of R.C. 2907.323(A)(3) where the picture depicted the victim's naked breasts, though she wore panties).
 {¶ 49} Also of note, the United States Sixth Circuit Court of Appeals has also analyzed R.C. 2907.323 in similar terms. In United States v.McGrattan, (C.A.6, 2007), 504 F.3d 608, the court reviewed the decisions in Young and Osborne and questioned whether R.C. 2907.323 requires both a lewd exhibition and a focus on the genitals of the victim. Before answering the question in the negative, the court analyzed pertinent case law, some of which is mentioned above, and concluded that its review of Ohio state cases indicated that convictions based on lewd exhibitions of nudity, which did not involve an exhibition of the genitals or pubic area of the victims, were upheld as violations of R.C. 2907.323.
 {¶ 50} Having found that R.C. 2907.323(A)(1) does not require that the photograph be a depiction of the genitals or pubic area of the victim, we turn now to whether the evidence was sufficient to demonstrate the photograph's lewd nature.
 {¶ 51} While McDonald agrees that the pictures depicting the victim's exposed breast constitute nudity, he argues that they are not otherwise lewd. In order to support his claim that the photographs were not sexually provocative or suggestive, McDonald cites State v.Kerrigan, Greene App. No. 2005-CA-114, 2006-Ohio-4279. Therein, the Second District Court of Appeals reversed the defendant's convictions for illegal use of a minor in nudity-oriented materials because the depictions of nudity were not lewd.
 {¶ 52} In Kerrigan, the court reviewed the decisions in Young andOsborne and concluded that "it is the character of the material or performance, not the purpose of the person possessing or viewing it, that determines whether it involves a lewd exhibition or a graphic focus on the genitals." Id. at ¶ 22. *Page 13 
 {¶ 53} Therefore, the Second District analyzed the items[2] seized from the defendant in terms of their lewdness and defined lewd, based on Webster's Third New International Dictionary, as "sexually unchaste or licentious: DISSOLUTE, LASCIVIOUS: suggestive of or tending to moral looseness: inciting to sensual desire or imagination: INDECENT, OBSCENE, SALACIOUS." (Capitalization in original.) Id. at ¶ 29. The court then concluded that the videos in question were not lewd because they did not focus on the genitals of the naked children, were not provocative, nor included suggestive poses or editing.
 {¶ 54} However, Kerrigan is not dispositive of the case at bar, as the videos discussed therein are distinguishable from the photographs seized from McDonald's computer. The photographs depict McDonald pulling down the victims' shirts to focus on their breasts, with particular emphasis on the nipple area. Each photograph was taken while the victim was sleeping and had no way to contest having their naked breasts photographed. Therefore, from this evidence, when viewed in a light most favorable to the state, the court could have found beyond reasonable doubt that the photographs were lewd and taken in violation of R.C. 2907.323(A)(1).
 {¶ 55} Having found the evidence sufficient to support the convictions, McDonald's third assignment of error is overruled.
 {¶ 56} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Currently, R.C. 2907.08 reads differently than we have quoted here. However, we will analyze the validity of the indictment based on the language still in effect at the time McDonald was indicted and convicted.
[2] The materials consisted of videos documenting various European movements, similar to nudism, in which men and boys of various ages trained in a gymnasium, were instructed in boxing technique, swam in a pool, took a communal shower, and participated in a nudist family's everyday life. *Page 1