DECISION AND JUDGMENT ENTRY
{¶ 1} Donald E. Smith appeals the judgment of the Pickaway County Court of Common Pleas in Case No. 2004-CR-234, convicting him of illegal use of minor in nudity-oriented material or performance. Smith also appeals the judgment of the Pickaway County Court of Common Pleas in Case No. 2004-CR-253, convicting him of aggravated burglary, felonious assault, and four counts of kidnapping. Smith first contends that the trial court erred by refusing to dismiss the indictment charging him with illegal use of a minor in nudity-oriented material where the indictment failed to allege the essential elements of recklessness and lewdness. Because we find that the indictment failed to allege the mental element necessary to commit the offense of illegal use of a minor in nudity-oriented material, we agree. Accordingly, we reverse and vacate Smith's conviction for illegal use of a minor in nudity-oriented material.
 {¶ 2} Next, Smith contends that the record contains insufficient evidence to support his conviction for felonious assault because it contains no evidence that he caused or attempted to cause bodily injury. Because we find that the record contains evidence that Smith held his victim at knifepoint and threatened to cause her physical harm, we disagree. Smith also contends that the manifest weight of the evidence does not support his conviction for felonious assault because the state failed to prove beyond a reasonable doubt that he attempted to cause physical harm. Because we find that the record contains substantial evidence upon which the jury could reasonably conclude that the state proved beyond a reasonable doubt that Smith attempted to cause physical harm, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Smith guilty of felonious assault. Accordingly, we overrule Smith's second and third assignments of error.
 {¶ 3} Finally, Smith contends that the trial court illegally imposed non-minimum consecutive sentences upon him. Because we find that the trial court considered R.C. 2929.14(B) and (E)(4), as well as R.C.2929.19(B)(2), in imposing non-minimum consecutive sentences, and because the Ohio Supreme Court has declared parts of those statutory sections unconstitutional, we find Smith's sentences void. Accordingly, we vacate Smith's sentences for aggravated burglary, kidnapping, and felonious assault and remand this cause to the trial court for resentencing.
 I. {¶ 4} On November 5, 2004, the Pickaway County Grand Jury indicted Smith for one count of illegal use of a minor in nudity-oriented material in violation of R.C. 2907.03(A)(1), a felony of the second degree, in Pickaway County Case No. 2004-CR-234. Subsequently, in Case No. 2004-CR-253, the Pickaway County Grand Jury indicted Smith for aggravated burglary, in violation of R.C. 2911.11(A)(2), a felony of the first degree; four counts of kidnapping, in violation of R.C.2905.01(B)(2), felonies of the first degree; felonious assault, in violation of R.C. 2903.11(A)(2), a felony of the second degree; and abduction, in violation of R.C. 2905.02(A)(2), a felony of the third degree. Smith pled not guilty to all of the charges against him. The matter proceeded to a jury trial on all charges on December 12, 2005.
 {¶ 5} The trial testimony revealed that at the time of the September 18, 2004, incident underlying the charge of illegal use of minor in nudity-oriented material, Smith resided with his girlfriend, Cristi Hankins, and their three young sons in the home of Cristi's mother and step-father, Robert and Cynthia Smith.[2] Cristi's younger sister also resided in the home.
 {¶ 6} The illegal use of a minor in nudity-oriented material charge arose out of an incident where Cristi's younger sister discovered a video camera, which she recognized as Smith's, concealed in a pile of dirty clothes on the bathroom floor in her family's home. She noticed the camera lens, protruding from the pile of clothes and pointed directly at the toilet and shower area of the bathroom, as she used the toilet. When she removed the camera from its hiding place, she discovered that it was recording. After rewinding the tape a bit, she discovered that it recorded her using the toilet. Upset, she opened the camera and tore up the tape. She called her mother at work to tell her what happened. Robert returned to the home and reported the incident to the Ashville Police Department.
 {¶ 7} After that incident, Robert asked Smith to leave the family's home. Smith then went to live with his sister in Hilliard, Ohio. Cristi and the boys also left to live with Smith at his sister's home for approximately two weeks.
 {¶ 8} On October 4, 2004, Smith and Cristi left the boys in daycare, and left the childrens' car seats, formula, and diapers at Smith's mother's house, along with a note indicating that they were abandoning their sons. The two headed for Texas. Cristi testified that Smith took her against her will, and threatened to kill her or the children if she told anyone. But, Smith testified that she willingly left with him.
 {¶ 9} On November 27, 2004, a third incident occurred at the Smith family home, forming the basis of Smith's aggravated burglary, kidnapping, and felonious assault charges. Robert testified that, on that date, he awoke to the sound of shattering glass. He went downstairs to discover that the side door glass was shattered, and the door was partially opened. He then heard Cynthia screaming upstairs. As he started up the stairs, Cynthia came down the stairs with Smith behind her. Smith had a twelve-inch kitchen knife, and said he wanted to have a family meeting about the earlier incidents. Robert asked Smith to put down the knife and leave the house, but Smith wanted to go upstairs. Robert testified that Smith told them that someone would get hurt if anybody called the cops.
 {¶ 10} After about ten minutes, the three of them headed upstairs, where Robert knocked on Cristi's door and asked her to open it. Smith then kicked in the door, grabbed Cristi, holding the knife to her stomach. He then backed up, forcing Cristi's younger sister to retreat into the closet.
 {¶ 11} Cynthia testified that the first thing she remembered was Robert getting out of bed and going downstairs to investigate the shattering noise that awakened him. She started to go down the stairs behind him, but decided to check on the two older boys in their room. She found Smith outside their bedroom. Cynthia saw Smith had a knife and started screaming. She then ran down the stairs, followed by Smith, and came to Robert. She headed toward the kitchen and picked up the phone, but the line was dead. Smith told her that he cut the line. Cynthia testified that Smith wanted to have a family talk about the videotape, and that he kept trying to get them to go back upstairs with him. She told him that he needed to leave. He kept saying "come on, come on" and gesturing toward the steps with the knife. Cynthia reported that Smith kept saying that nobody would get hurt unless the cops were called, but that if the cops were called, somebody was going to get hurt.
 {¶ 12} Cynthia testified that she and Robert went back upstairs with Smith. She recalled Robert knocking on Cristi's door, and Cristi asking if he was alone. She indicated that when Smith saw the police lights through the blinds, he kicked in the bedroom door. She saw him go after Cristi, and stated that Cristi was screaming and running. As Smith went after Cristi, Cynthia heard pounding and ran down the stairs to let the police into the house. By the time she got back upstairs, the police had Smith on the ground.
 {¶ 13} Cristi's younger sister testified that she awoke to the sound of glass shattering. She indicated that she got up and heard her mother say, "Oh, my god, Donnie, don't[,]" and then heard her mother scream. She grabbed the phone to call 911, but the line was dead. She got up and went to Cristi's room where she awakened Cristi and told her that Smith was in the house. She testified that Cristi grabbed her cell phone and called 911. The sister then locked the bedroom door, and went to stand by the closet door, while Cristi stood next to the baby's crib. Like Robert and Cynthia, Cristi's sister testified that Robert knocked on the door and told them to open it, and that when Cristi asked if he was alone, he said, "No."
 {¶ 14} The sister then testified that Smith kicked in the door, grabbed Cristi, and put the knife to her stomach. She indicated that he started backing toward her, and that she started backing as well. She ended up in the closet, and Smith blocked her there, holding Cristi in his arms. Despite Robert's pleas, Smith would not let her out of the closet. The sister testified that Smith kept saying that they were going to have a family meeting, and that no one would get hurt if they did what he said. When asked what he said would happen if they did not have a family meeting or do what he said, the sister testified, "He said he would hurt us."
 {¶ 15} Cristi testified that her sister woke her up early in the morning, telling her that Smith was in the house. She used her cell phone to call 911. While she spoke with the operator, Robert knocked on the door and asked her to open it. She asked if he was alone, and he replied, "No." Then Smith kicked in the door, rushed into the room yelling, grabbed her, put the knife on her stomach, and pulled her over in front of the closet. She recalled Robert and Smith yelling, but stated that she was "in shock" and could not remember exactly what they said. Cristi testified that Smith was "violent", and "wanted us to listen to him." When asked upon cross-examination how long Smith held her at knifepoint, Cristi estimated, "Probably five, ten minutes. I don't know."
 {¶ 16} Officer Kevin Elliott of the Ashville Police Department testified that he was the first officer to arrive at the Smith household on November 27, 2004. Based upon the nature of the call and the information he received from the dispatcher, he requested backup from the South Bloomfield Police Department before he arrived at the scene. He testified that when he arrived at the scene, he could hear the South Bloomfield officers responding to the scene. As he approached the house, he noticed that the mini blind on the second floor was pulled back a little bit, as if somebody was trying to look out. When no one answered the front door, the dispatcher advised him that the suspect was in the residence with a knife. Officer Elliott unsuccessfully attempted to force entry. At that time, Officers David Parlow and James Chapman of the South Bloomfield Police Department arrived, and Officer Chapman forced open the front door.
 {¶ 17} The officers entered the residence and Officer Elliott proceeded into the kitchen where he noticed the sliding glass door was shattered. The Officers proceeded up the stairs, and Officer Elliott observed a man with a large butcher knife holding a woman. The man had his left arm around her throat, and his right arm around her abdomen. Officer Elliott indicated that all three officers immediately approached the bedroom with their guns drawn, shouting for the man to drop the knife and let the woman go. He testified that it seemed to go on forever, kind of in slow motion, but that it was probably just a matter of seconds until the man, who he later identified as Smith, complied with their demands.
 {¶ 18} Officer David Parlow responded to the scene on behalf of the South Bloomfield Police Department. He offered testimony substantially similar to that of Officer Elliott. He described the forced entry into the residence, noted that a female resident greeted them at the door and directed them upstairs. He indicated that they made a quick sweep of the downstairs before proceeding upstairs, where they observed a man holding a woman at knifepoint. He testified that Smith had a woman in a "bear hug," with one arm up around her upper chest area, and a large kitchen knife in his hand, pressed into the female's abdomen.
 {¶ 19} Officers Elliott and Parlow both testified that after they cuffed Smith, they searched him and discovered a homemade sheath for one of the knives, a roll of duct tape, a plastic bag with various kinds of speaker or electrical wire. Additionally, on the inside of Smith's left leg, they discovered another homemade knife sheath and a black and yellow utility knife.
 {¶ 20} The jury returned a verdict finding Smith guilty of all charges with the exception of the abduction charge, for which the jury returned a not guilty verdict. The court entered a judgment and sentenced Smith to serve seven years in prison for illegal use of a minor in nudity-oriented material in Case No. 2004-CR-234. The court entered a separate judgment for the other offenses in Case No. 2004-CR-253, and sentenced Smith to serve: (1) eight years in prison for aggravated burglary; (2) eight years in prison on each of the four kidnapping convictions; and (3) seven years in prison on the felonious assault conviction. The court ordered Smith to serve his sentences for aggravated burglary and each of the four kidnapping convictions concurrent to each other. Additionally, the court ordered him to serve his sentence for felonious assault consecutive to his sentences for aggravated burglary and kidnapping, and consecutive to the sentence it imposed for illegal use of a minor in nudity-oriented material in Case No. 2004-CR-234.
 {¶ 21} Smith appeals, raising the following assignments of error: I. "The trial court erred by refusing to dismiss an indictment that did not allege a crime in violation of Article I, § 10 of the Ohio Constitution." II. "The trial court violated Donald Smith's right to due process and a fair trial when, in the absence of sufficient evidence, the trial court found him guilty of felonious assault." III. "The trial court violated Donald Smith's rights to due process and a fair trial when it entered a judgment of conviction for felonious assault, which was against the manifest weight of the evidence." IV. "The trial court erred by imposing an illegal sentence."
 II. {¶ 22} In his first assignment of error, Smith contends that the trial court erred by refusing to dismiss his indictment for illegal use of a minor in nudity-oriented material where the indictment failed to allege that: (1) he acted recklessly; and (2) that the nudity-oriented material in which he allegedly used a minor was lewd. He asserts that because the indictment failed to state these elements, it was legally insufficient to charge him with a crime. Therefore, he claims that the trial court should have granted his motion to dismiss the indictment.
 {¶ 23} The primary purpose of an indictment is to inform a defendant of the offense with which he is charged to enable his preparation for trial. State v. Lindway (1936), 131 Ohio St. 166, 182. (Citation omitted.) An indictment must contain a statement that the defendant has committed a public offense that is specified in the indictment. Crim.R. 7(B). The Rule further provides: "The statement may be made in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of all the elements of the offense with which the defendant is charged." Crim.R. 7(B).
 {¶ 24} While the rule permits an indictment to be in the words of the statute, the Ohio Supreme Court has recognized that "the courts might still require more to put the defendant on notice of the offense charged." State v. Ross (1967), 12 Ohio St.2d 37, 39. "The general rule that an indictment or information for a statutory offense is sufficient if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words, does not apply when the statutory words do not in themselves fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements and ingredients necessary to constitute the offense intended to be punished.'" Id. at 39-40, quoting 4 Wharton's Criminal Law and Procedure 626.
 {¶ 25} In Ross, the Court held that: "Where a criminal statute does not clearly make a certain specific intent an element of the offense, but judicial interpretation has made such intent a necessary element, an indictment charging the offense solely in the language of the statute is insufficient." Id. at syllabus.
 {¶ 26} "A judgment of conviction based upon an indictment which does not charge an offense is void for lack of jurisdiction of the subject matter and may be successfully attacked either on direct appeal to a reviewing court or by a collateral proceeding." State v. Cimpritz
(1953), 158 Ohio St. 490, at paragraph six of the syllabus. The sufficiency of an indictment is a question of law which we review de novo. See, e.g., State v. Beaumont (1964), 4 Ohio App.2d 212.
 {¶ 27} Here, the grand jury indicted Smith on one count of illegal use of a minor in nudity-oriented material in violation of R.C.2907.323(A)(1). The statute provides, in relevant part, that: "No person shall * * * [p]hotograph any minor who is not the person's child or ward in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity * * *." R.C. 2907.323(A)(1).
 {¶ 28} Smith's indictment states, in relevant part, that Smith: "ON OR ABOUT THE 18TH DAY OF SEPEMBER, 2004, AT THE COUNTY OF PICKAWAY, OR BY SOME MANNER ENUMERATED IN SECTION 2901.12 OF THE OHIO REVISED CODE WHEREBY PROPER VENUE IS PLACED IN THE COUNTY AFOREMENTIONED, DID PHOTOGRAPH A MINOR WHO IS NOT HIS CHILD OR WARD IN A STATE OF NUDITY, OR CREATE, DIRECT, PRODUCE, OR TRANSFER ANY MATERIAL OR PERFORMANCE THAT SHOWED THE MINOR IN A STATE OF NUDITY. CONTRARY TO AND IN VIOLATION OF SECTION 2907.313(A)(1) OF THE OHIO REVISED CODE AND BEING A FELONY OF THE SECOND DEGREE, BEING AGAINST THE PEACE AND DIGNITY OF THE STATE OF OHIO."
 {¶ 29} Smith first contends that his indictment for illegal use of a minor in nudity-oriented material or performance is insufficient to charge an offense because it fails to state the requisite mental element for commission of the offense. While R.C. 2907.323 does not identify a specific mental element required to violate the statute, in State v.Young (1988), 37 Ohio St.3d 249, the Ohio Supreme Court held that "[r]ecklessness is the culpable mental state required to constitute a violation of R.C. 2907.323(A)(3)." Id. at paragraph three of the syllabus. The court reasoned that the statute does not specify any degree of culpability, nor does it plainly indicate a purpose to impose strict liability. Therefore, the court concluded that R.C. 2901.21(B) provided the degree of culpability required to commit the offense is recklessness.[3] Id. at 253, citing State v. Adams (1980),62 Ohio St.2d 151; State v. O'Brien (1987), 30 Ohio St.3d 122, 124.
 {¶ 30} Although not stated in R.C. 2907.323(A)(1), recklessness is the culpable mental state for the crime of illegal use of a minor in nudity-oriented material, and is an essential element of the offense.State v. Steele (Aug. 2, 2001), Vinton App. No. 99CA530, 2001-Ohio-2535. See, also, State v. Ashcraft (Oct. 3, 2000), Licking App. No. 00-CA-00021. While recklessness is an essential element of illegal use of a minor in nudity-oriented material by virtue of the legislative enactment of R.C. 2901.21(B), rather than by judicial decree, that statute is in pari materia with R.C. 2907.323, and the statutes must be read together. State v. Meeker (Sept 15, 1986), Ross App. No. 1146 (interpreting R.C. 2901.21(B) to require proof of recklessness as an essential element of endangering children in violation of R.C.2919.22(A)). Therefore, we hold that the failure to include the culpable mental state of recklessness in the indictment charging Smith with illegal use of a minor in nudity-oriented material, in violation of R.C.2907.323(A)(1), rendered the indictment invalid. Id.; Ross, supra, at syllabus. Thus, we conclude that the trial court lacked subject matter jurisdiction to try Smith on that charge. Accordingly, we reverse and vacate Smith's conviction for illegal use of a minor in nudity-oriented material.
 {¶ 31} Smith also contends that the indictment charging him with illegal use of a minor in nudity-oriented material is insufficient to charge him with the offense because the indictment fails to allege that the photographs were lewd. Smith contends that pursuant to the Ohio Supreme Court's decision in State v. Young (1988), 37 Ohio St.3d 249, and our decision in State v. Steele (Aug. 2, 2001), Adams App. No. 99CA530, 2001-Ohio-2535, lewdness is an essential element of the offense, and therefore must be set forth in the indictment. However, because we have already found that the Smith's indictment for illegal use of a minor in nudity-oriented material is insufficient because it failed to state the requisite culpable mental state for the offense, we find this argument moot. Therefore, we decline to address it here. See, App.R. 12(A)(1)(c).
 III. {¶ 32} In his second assignment of error, Smith contends that the state failed to present sufficient evidence to support his conviction for felonious assault, because the state did not present evidence to establish the element of "cause or attempt to cause physical harm." Specifically, Smith contends that because the record demonstrates that, even though he had the opportunity to do so for at least five minutes, he did not actually hurt Cristi.
 {¶ 33} In reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319.
 {¶ 34} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 35} R.C. 2903.11 defines the offense of felonious assault. It provides, in relevant part: "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2).
 {¶ 36} In State v. Brooks (1989), 44 Ohio St.3d 185, the Ohio Supreme Court, considered whether the act of pointing a gun at someone, without additional evidence of the actor's intention, would be sufficient to support a conviction for felonious assault. The Court concluded that while the act of pointing a deadly weapon at someone would justify a jury's conclusion that the accused committed aggravated menacing, in violation of R.C. 2903.21, the pointing of a deadly weapon at another, alone, is an equivocal indicator of the accused's intention to cause physical harm by use of that weapon. Id. at 192. However, the Court went on to find that the record contained sufficient evidence to support a conviction for felonious assault where testimony revealed that the defendant and the victim "became embroiled in a volatile argument[,]" and that "the defendant suddenly drew a revolver and angrily told [the victim] that he would kill her." Id.
 {¶ 37} The Court later elaborated upon its ruling in Brooks, holding that "The act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)." State v. Green (1991),58 Ohio St.3d 239, syllabus.
 {¶ 38} Here, Smith does not dispute that he held a twelve-inch knife to Cristi's abdomen or that he threatened to cause her bodily injury. In fact, he concedes that the record contained "substantial evidence" that he held a knife to her abdomen and threatened to cause bodily injury. However, Smith contends that his failure to act upon his threat during the five minutes he held Cristi at knifepoint rebuts the inference that he was attempting to cause her physical injury. We believe that Smith's argument that the length of time he held Cristi at knifepoint without actually causing her physical harm goes to the weight of the evidence, rather than the sufficiency of the evidence. Therefore, we shall address it in the context of Smith's third assignment of error below.
 {¶ 39} In light of the Ohio Supreme Court's holdings inBrooks and Green, supra, we conclude that Smith's holding Cristi at knifepoint, coupled with his repeated threats to cause bodily harm constitute sufficient evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that Smith committed felonious assault. Accordingly, we overrule Smith's second assignment of error.
 IV. {¶ 40} In his third assignment of error, Smith contends that his felonious assault conviction is contrary to the manifest weight of the evidence. Specifically, he contends that because he did not actually stab Cristi, despite having ample opportunity to do so, no reasonable trier of fact could conclude that the state proved that he caused or attempted to cause her physical harm.
 {¶ 41} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks
(1992), 78 Ohio App.3d 206, 214; State v. Martin (1983),20 Ohio App.3d 172, 175. In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995), 103 Ohio App.3d 368,370-71; Martin at 175. "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus.
 {¶ 42} Pursuant to the Ohio Supreme Court's holdings inBrooks and Green, supra, the act of pointing a deadly weapon at a victim, coupled with a threat indicating an intention to use the weapon is sufficient evidence to establish felonious assault. Despite Smith's assertions, actual physical harm is not a necessary element of felonious assault. R.C. 2903.11(A)(2). "Rather, an `attempt' to cause physical harm with a deadly weapon is sufficient to constitute felonious assault under R.C. 2903.11(A)(2)." State v. Standberry (Feb. 15, 1996), Cuyahoga App. No. 69079, citing State v. Brown (1994), 97 Ohio App.3d 293, 299
and State v. Zackery (1987), 31 Ohio App.3d 264, 265.
 {¶ 43} R.C. 2923.02(A) defines "attempt" and provides: "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." In construing this statutory definition, the Ohio Supreme Court has held "[a] `criminal attempt' is when one person purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." State v. Woods (1976),48 Ohio St.2d 127, paragraph one of the syllabus, overruled on other grounds by State v. Downs (1977), 364 N.E.2d 1140, 1142. Overt acts demonstrating a firm purpose to commit a crime may be punished, even if police intervention prevents a defendant from actually completing the act. Id. at 132.
 {¶ 44} Here the record contains substantial evidence that Smith rushed into Cristi's bedroom, grabbed her, and held a twelve-inch knife to her abdomen. Further, the record contains substantial competent, credible evidence in the form of testimony from Cristi's mother, step-father, and sister, that Smith threatened to harm Cristi or her family members if they refused to participate in a "family meeting."
 {¶ 45} Because Smith held a twelve-inch knife to Cristi's abdomen and threatened to harm her, it is reasonable to infer that he attempted to cause physical harm to her. Smith relies solely upon Cristi's own estimate of the length of time that he held her at knifepoint to rebut this inference. However, a reasonable jury could conclude that his failure to actually harm Cristi during the relatively short period of time in which he held her at knife point was insufficient to overcome his overt actions demonstrating a clear intention to harm her, particularly in light of the fact that the police quickly intervened to prevent him from carrying out his threats.
 {¶ 46} After reviewing the entire record, we find that it contains substantial evidence upon which the jury could reasonably conclude that the state proved beyond a reasonable doubt that Smith attempted to cause physical harm to Cristi. Smith does not claim that the record lacks substantial evidence of the remaining elements of the crime, namely that he acted knowingly, and that the knife constituted a deadly weapon. Thus, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Smith guilty of felonious assault. Accordingly, we overrule Smith's third assignment of error.
 V. {¶ 47} In his fourth and final assignment of error, Smith contends that the trial court erred in imposing non-minimum, consecutive sentences based upon the factors enumerated in R.C. 2929.14(B) and (E)(4). Therefore, based upon the Ohio Supreme Court's decision inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, he contends that this court must vacate his sentence and remand this cause to the trial court for resentencing. Additionally, Smith asserts that the application of Ohio's felony sentencing structure, as modified by Foster, will violate his constitutional right to due process by operating as an ex post facto law. Therefore, he asserts that this court should instruct the trial court to impose minimum concurrent sentences for each of his convictions upon remand.
 {¶ 48} In Foster, the Ohio Supreme Court found that, to the extent they required judicial fact finding, R.C. 2929.14(B), 2929.14(E)(4) and2929.19(B)(2), as well as other sections of the Ohio Revised Code, violated the Sixth Amendment pursuant to the United States Supreme Court's holdings in Blakely v. Washington (2004), 542 U.S. 296 andApprendi v. New Jersey (2000), 530 U.S. 466. Foster, supra, at paragraphs one through seven of the syllabus. In constructing a remedy, the Foster Court excised the provisions it found to offend the Constitution, granting trial court judges full discretion to impose sentences within the ranges prescribed by statute. Id. The Court then held that the cases before the Court "and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent" with the Court's opinion. Id. at ¶ 104. Consistent with the United States Supreme Court's holding in United States v.Booker (2005), 543 U.S. 220, the Foster Court only applied its holding retroactively to cases that were then pending on direct review or not yet final. Foster at ¶ 106.
 {¶ 49} Here, the trial court considered R.C. 2929.14(B) and (E)(4), as well as R.C. 2929.19(B)(2), before imposing non-minimum, consecutive sentences. The court issued its sentencing entry on February 3, 2006. The Ohio Supreme Court decided Foster on February 27, 2006, and Smith timely filed his original notice of appeal on March 6, 2006. Thus, Smith's case is pending or not yet final as contemplated by theFoster court. Therefore, we find that pursuant to the Ohio Supreme Court's holding in Foster, Smith's sentences for aggravated burglary, kidnapping, and felonious assault are void. See Foster at ¶ 103. Accordingly, we vacate Smith's sentences for those offenses and remand this cause for resentencing in accordance with Foster.
 {¶ 50} Smith argues that because the application of Ohio's felony sentencing structure, as modified by Foster, will violate his constitutional right to due process by operating as an ex post facto law, we should instruct the trial court to impose minimum, concurrent sentences upon remand. However, we find that this issue is not yet ripe for our review because Smith has not yet been sentenced underFoster. See, e.g., State v. Muszynec, Cuyahoga App. No. 87447,2006-Ohio-5444, at ?30; State v. Chambers, Cuyahoga App. No. 87221,2006-Ohio-4889, at ?35; State v. Ervin, Cuyahoga App. No. 87333,2006-Ohio-4498; at ?39; State v. Rady, Lake App. No. 2006-L-012,2006-Ohio-3434, atl|16; State v. Pitts, Allen App. No. 01-06-02,2006-Ohio-2796, at ?7; State v. Lathan, Lucas App. No. L-03-1188,2006-Ohio-2490, atl|12; State v. Sanchez, Defiance App. No. 4-05-47;2006-Ohio-2141, at ?8; State v. McKercher, Allen App. No. 1-05-83,2006-Ohio-1772, at ?6. Therefore, we decline to address this argument.
 VI. {¶ 51} In conclusion, we: (1) sustain Smith's first assignment of error and consequently reverse and vacate his conviction for illegal use of a minor in nudity-oriented material; (2) overrule Smith's second and third assignments of error and affirm his conviction for felonious assault; and (3) sustain Smith's fourth assignment of error, vacate his sentences for aggravated burglary, kidnapping, and felonious assault, and remand this cause for resentencing.
JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
CONVICTION FOR ILLEGAL USE OF A MINOR IN NUDITY-ORIENTED MATERIALVACATED,
SENTENCES VACATED,
AND CAUSE REMANDED.
[2] Although Robert and Cynthia share a common last name with Smith, the record reflects that they are not related to him by blood or marriage.
[3] R.C. 2901.21(B) provides: "When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART, THAT THE COVICTION FOR ILLEGAL USE OF MINOR IN NUDITY-ORIENTED MATERIAL BE VACATED, THAT THE REMAINING SENTENCES BE VACATED AND THIS CAUSE BE REMANDED to the trial court with an instruction to resentence the defendant, and that Appellant and Appellee share equally in the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pickaway County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J.: Concurs in Judgment and Opinion of Judge Kline; Concurs with
Concurring Opinion of Judge Abele.
Abele, J.: Concurs in Judgment and Opinion with Opinion.