DECISION AND JUDGMENT ENTRY
{¶ 1} Randy L. Nichols appeals his four cruelty to animals convictions after a jury trial in the Hocking County Municipal Court, regarding his care of horses. On appeal, Nichols contends that insufficient evidence supports his convictions. Because, after viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of the four crimes of cruelty to animals proven beyond a reasonable doubt, we disagree. Nichols further contends that his convictions are against the manifest weight of the evidence. Because we cannot find that, in resolving conflicts in the evidence, the jury, as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial granted, we disagree. Nichols next contends that he was denied a fair trial *Page 2 
because a State witness repeatedly left inflammatory and improper excluded photos in plain view of the jury. Because Nichols relies on presumptions and speculation and not on evidence contained in the record, we do not address his argument. Accordingly, we overrule Nichols' three assignments of error and affirm the judgment of the trial court.
 I. {¶ 2} The State charged Nichols with seven counts of cruelty to animals under R.C. 959.13(A)(1). Specifically, the State alleged that on or about January through May 26 of 2005, Nichols recklessly deprived seven horses of sustenance or recklessly confined those seven horses without supplying them with a sufficient quantity of good, wholesome food and water. Nichols entered not guilty pleas.
 {¶ 3} The court granted the State's motion to dismiss three of the seven counts. The remaining four counts proceeded to a jury trial.
 A. State's Version of the Facts at Trial {¶ 4} The Hocking County Humane Society investigated Nichols' treatment of his horses. Humane Officiers Sandra Harvey and Susan Specht visited Nichols' farm on several occasions during January through May of 2005. They took numerous photographs. Officer Harvey executed a search warrant at Nichols' farm on May 26, 2005, and seized 15 horses. She described the four horses in question as "pretty well emaciated."[1] *Page 3 
 {¶ 5} Officer Specht testified that the Humane Society's investigation showed that the four horses in question were malnourished to the point that some of the horses did not have the strength to stand. While Nichols occasionally provided them with food, the amount provided was inadequate.
 {¶ 6} The State called eight witnesses to establish that Nichols recklessly deprived the four horses of sustenance or recklessly confined those four horses without supplying them with a sufficient quantity of good, wholesome food and water during January through May 26 of 2005.
 {¶ 7} The State's expert witness, Kim Stevelt, D.V.M., a veterinarian since 1977, testified that he was "[a] hundred percent" certain that the horses "were starved." Dr. Stevelt testified that he used the Henneke scale when he examined the physical condition of each of the four horses. He stated that on the Henneke scale of 1 to 9, a "1" means the horse is starved while a "9" means the horse is obese. The four horses in question were a "1" or close to a "1." He further stated that his observation of the four horses comported with the Humane Society's pictures.
 B. Nichols' Version of Facts at Trial {¶ 8} Nichols called nine witnesses to establish that he did provide adequate food and water for the horses. Several witnesses testified that Nichols bought large 1300 pound bales of hay from them. Wayne Mauger testified that he sold Nichols numerous bales of hay. In April of 2005, he personally delivered a semi load of hay, i.e., five bales at 1300 pounds a bale, to Nichols farm. He stated that Nichols bought hay from him before and after the April delivery by dropping *Page 4 
by his farm and taking one bale (1300 pounds) at a time. Nichols introduced more than two dozen canceled checks showing that he bought hay from various people. Other witnesses testified that they saw food (including hay and grain) and water at the farm. A neighbor, Annie McMakin, who lived directly across the road from Nichols testified that Nichols fed his horses every night and sometimes during the day. She, along with several other witnesses, stated that a creek goes through Nichols' property and that the horses have access to the water in the creek.
 C. Jury Verdict, Sentencing, Appeal {¶ 9} The jury returned four verdicts, finding Nichols guilty of each charge. The court accepted the guilty verdicts and sentenced Nichols accordingly.
 {¶ 10} Nichols appeals his convictions and asserts the following three assignments of error: I. "Verdict is against the manifest weight of the evidence." II. "The evidence admitted at trial is insufficient to sustain a verdict of guilty." And, III. "The Prosecution's chief witness repeatedly left inflammatory and improper excluded photographic evidence in plain view of the jury."
 II. {¶ 11} Nichols contends in his second assignment of error that the evidence is insufficient to support his convictions.
 {¶ 12} The function of an appellate court, when reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a *Page 5 
reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith, Pickaway App. No. 06CA7, 2007-Ohio-502, ¶ 33, citing State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. See, also, Jackson v. Virginia
(1979), 443 U.S. 307, 319.
 {¶ 13} The sufficiency of the evidence test "raises a question of law and does not allow us to weigh the evidence." Smith at ¶ 34, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. Instead, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Smith, at ¶ 34, citing Jackson, 443 U.S. at 319. This court will "reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact." Smith, at ¶ 34, citing State v. Thomas (1982), 70 Ohio St.2d 79, 79-80; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 14} The cruelty to animals offense in question is set forth in R.C.959.13(A)(1), which states, "No person shall * * * [t]orture an animal, deprive one of necessary sustenance, * * * or impound or confine an animal without supplying it during such confinement with a sufficient quantity of good wholesome food and water[.]" The culpability required for a R.C. 959.13(A)(1) violation is recklessness. State v. Clark, Lake App. No. 2007-L-010, 2007-Ohio-5209, ¶ 4. "A person acts recklessly when, with heedless indifference to the consequences, *Page 6 
he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).
 {¶ 15} The crux of Nichols' contention is that the witnesses testified that the horses in question had adequate food and water.
 {¶ 16} Here, we find that the State presented sufficient evidence, if believed, to support the four cruelty to animals convictions. The State called eight witnesses to the stand. Its expert, Kim Stevelt, D.V.M., a veterinarian since 1977, testified that the horses were on the verge of starvation. Dr. Stevelt's examination of the horses within days of their seizure comported with the pictures taken by the Humane Society and witnesses who saw the horses.
 {¶ 17} Sue Specht and Sandy Harvey took the pictures for the Humane Society. Harvey testified that the horses were near death and would have died without the Humane Society's intervention. She said that the rescued horses made remarkable progress once they were properly fed.
 {¶ 18} Regina Smalley testified that some of the horses were malnourished because of a lack of sufficient food and water, and was afraid that they were going to die. Linda Lonsinger testified that she was so disturbed by the horses' condition as she drove by the field that it hurt to look at them. Audra Carson testified that she had been around horses all her life and that most of Nichols' horses were emaciated. Connie Hatcher testified that she could only remember *Page 7 
some of the four horses, and they looked "terrible." Tracy Waits testified that she could see the pain in the horses' eyes as they suffered from starvation because "starvation hurts."
 {¶ 19} Therefore, after viewing the evidence in a light most favorable to the State, we find that any rational trier of fact could have found the essential elements of the four crimes of cruelty to animals proven beyond a reasonable doubt. Consequently, sufficient evidence supports Nichols' convictions.
 {¶ 20} Accordingly, we overrule Nichols' second assignment of error.
 III. {¶ 21} Nichols contends in his first assignment of error that his convictions are against the manifest weight of the evidence.
 {¶ 22} An appellate court, when determining whether a criminal conviction is against the manifest weight of the evidence, "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v.Eskridge (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. See, also, Smith, supra, at ¶ 41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." Smith at ¶ 41, citing State v. Garrow (1995),103 Ohio App.3d 368, 370-371; State v. Martin (1983), 20 Ohio App.3d 172,175. However, "[o]n the trial of a case, * * * the weight to be *Page 8 
given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 23} Nichols contends that he produced witnesses that established that he fed the horses and provided them with water. The witnesses saw food and water in the pasture. He claims that even the State's witnesses saw food and water in the pasture.
 {¶ 24} Earlier, we outlined the State's evidence through its eight witnesses when we addressed Nichols' insufficient evidence argument. Now we will outline Nichols' evidence. He called nine witnesses to the stand.
 {¶ 25} Wayne Mauger, Martin Smith, and William Duvall testified that they sold numerous large bales of hay to Nichols. A large bale would weigh around 1300 pounds. Sometimes they would deliver the hay directly into the pasture where the horses would have access to it.
 {¶ 26} David Bailey, Heather Nichols (Nichols' daughter), Chad Nichols (Nichols' son), Deputy Pat Allison, and Annie McMakin testified that the horses had adequate food and water. They testified, as did other witnesses, that a stream or creek ran through the property and that the horses had access to it. Deputy Allison provided security the day the Humane Society seized the horses. He saw two five foot tall bales of hay for the horses and saw the creek that runs through the property. Annie lives directly across the street from Nichols. She stated that Nichols fed the horses nightly and sometimes during the day. She saw hay and grain; she said a constant stream flows through the property. *Page 9 
 {¶ 27} Mark Merckle occasionally assisted Nichols in caring for the horses. He never saw Nichols deprive the horses of food or water. He said that Nichols fed his horses large bales of hay and loose grain, oats, and corn.
 {¶ 28} The jury heard both versions of the facts. They saw the exhibits, which included the State's pictures of the horses and Nichols' cancelled checks for purchasing hay. The jury chose to believe the State's version. That is its province. We cannot find that in resolving conflicts in the evidence, the jury, as the trier of fact, clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial granted. We find substantial evidence upon which the trier of fact could reasonably conclude that all the elements of cruelty to animals (four horses) were proven beyond a reasonable doubt. Therefore, we find that Nichols' four cruelty to animals convictions are not against the manifest weight of the evidence.
 {¶ 29} Accordingly, we overrule Nichols first assignment of error.
 IV. {¶ 30} Nichols contends in his third assignment of error that he was denied a fair trial because a State witness repeatedly left inflammatory and improper excluded photos in plain view of the jury. He claims that "[p]resumably, many of these photographs were not related to the charges brought against [him]."
 {¶ 31} Nichols does not rely on evidence contained in the record. Instead, he relies on presumptions and speculation. Therefore, we do not address this assignment of error. See App.R. 12 and App. R. 16. See, also, City of Whitehall v. Ruckman, Franklin App. No. 07AP-445,2007-Ohio-6780, ¶ 22. *Page 10 
 {¶ 32} Accordingly, we overrule Nichols third assignment of error and affirm the judgment of the trial court.
 JUDGMENT AFFIRMED. *Page 11 
 JUDGMENT ENTRY
It is ordered that this JUDGMENT BE AFFIRMED and that Appellant shall pay the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hocking County Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and McFarland, J.: Concur in Judgment and Opinion.
[1] Emaciate means "to cause to lose flesh so as to become very lean. Webster's Third New International Dictionary (1993) 738. *Page 1