[Cite as *State v. Lusher*, 2012-Ohio-5526.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | Case No. 11CA1 |
| v. | : | |
| | : | DECISION AND |
| Brandon Lusher aka | : | JUDGMENT ENTRY |
| Charles Brandon Lusher | : | |
| | : | |
| Defendant-Appellant. | : | Filed: November 27, 2012 |

_____

APPEARANCES:

Ian N. Friedman and Kristina W. Supler, Ian N. Friedman & Associates, L.L.C., Cleveland, Ohio, for Appellant.

Melinda Kowalski, Gallia County Special Prosecutor, Ohio Attorney General's Office, Columbus, Ohio, for Appellee.
_____

Kline, J.:

**{¶1}** Brandon Lusher appeals the judgment of the Gallia County Court of Common Pleas, which convicted him of three felonies related to Lusher obtaining various forms of state assistance on behalf of his grandparents. Initially, Lusher contends that the trial court erred when it denied Lusher's motion to dismiss based on time limits in the Ohio Administrative Code. Lusher's motion to dismiss pertained to Count 5 of the indictment, for which the jury found Lusher "not guilty." Consequently, we find that Lusher's arguments relative to his pretrial motion to dismiss are moot. Additionally, we find that Lusher waived his arguments that the time limitations in the Ohio Administrative Code pertained to any other counts in the indictment. Next, Lusher contends that there was insufficient evidence to convict him of theft. Because the state

failed to present evidence of the scope of express or implied consent, we agree.

Finally, Lusher contends that the trial court erred by admitting testimony of his

grandmother's hearsay statements. We find (1) that the trial court erred by admitting

the hearsay statements and (2) that the state did not satisfy its burden of showing that

the error was harmless with respect to Lusher's remaining convictions.

{¶2}    Accordingly, we reverse the judgment of the trial court and remand this

cause to the trial court for further proceedings consistent with this opinion.

I.

{¶3}    Lusher is the grandson of Thomas Breech (hereinafter "Thomas") and Lois

Breech (hereinafter "Lois"). Lusher possessed the power of attorney for both Thomas

and Lois. In February 2004, Lusher met with an employee of the Gallia County

Department of Job and Family Services (hereinafter the "Department") to discuss

obtaining medical benefits for Thomas.

{¶4}    Thomas began receiving various forms of medical assistance from the

county in March 2004. He enrolled in a medical benefit program called the "Passport

Program." Based on the guidelines of the Passport Program, Thomas was designated

as "institutionalized," even though he lived at home.

{¶5}    Lusher met with Department employees to re-certify Thomas's benefits in

2005 and 2006. As a result of Lusher's representations during the re-certification

process, Thomas qualified for food stamps as well as medical benefits. Lusher

represented that Thomas and Lois were separated. Lusher also did not provide the

Department with Lois's financial information. Lusher claimed that he made this

representation based on his understanding that Thomas was "institutionalized" (i.e., not

living in the home) under the guidelines for the Passport Program.  Lusher also claimed

that Department employees confirmed that his understanding was correct.

{¶6}    Lois and Thomas, however, lived in the same home.  They had separate

mailboxes with separate addresses, and they each had separate bedrooms.  Lusher

testified that Thomas's and Lois's bedroom doors had locks as well as separate exits

from the home.  Additionally, Thomas and Lois signed a separation agreement stating

that they would not share food or assets.

{¶7}    In October 2007, Lusher applied for assistance on behalf of Lois.  Mark

Coleman handled the application for Lois's benefits.  (Coleman had not been involved

with any of Thomas's applications for benefits.)  At trial, the state produced a

computerized application printout based on Coleman's processing of Lois's application

for benefits.  Lois's computerized application printout lists Lois's marital status as

"widowed."  State Exhibit 18 at 4.  Coleman also testified that the printout indicates that

Lois is living with "no one."  Trial Tr. at 184.  Additionally, the printout states that Lois

had not "transferred/sold/given away resources in the last five years."  State Exhibit 18

at 5.  (Lusher and the state disputed whether Lusher had provided this information to

Coleman.  Lusher argued that Coleman possibly entered this information on his own in

an effort to streamline the application process.)

{¶8}    Lusher also gave Coleman a handwritten application that was apparently

filled out by Lusher and signed by Lois.  The handwritten application has a section that

requires the applicant to "list everyone who lives with you even if they are not applying."

State Exhibit 19 at 2.  Lois's name is the only name listed in that section.  Lusher

claimed that, based on information from Department employees, Thomas was not living with Lois because Thomas was designated as "institutionalized."

{¶9}    During the application process, Lusher provided receipts for payments Lois made for rent, utilities, and various medical expenses. The payments were all made to the same company – Compassionate Hands for Strength and Hope (hereinafter "Compassionate Hands").

{¶10}    Ultimately, Lois was approved for food stamps and Medicaid benefits. Coleman, however, was troubled by the fact that Lois was paying the same company for rent, utilities, and various medical expenses. Coleman testified that he had never heard of Compassionate Hands and that it was unusual for an individual to pay the same company for these different expenses.

{¶11}    Apparently, Lusher and several other individuals formed Compassionate Hands. Lusher asserted that Compassionate Hands was a company dedicated to community outreach. Lusher claimed that Compassionate Hands initially paid some of the Breeches' medical and credit card debts. In return, Lusher transferred the deed to the Breeches' property to Compassionate Hands. Compassionate Hands then received monthly payments from the Breeches to pay off the debt.

{¶12}    As a result of Coleman's concerns, the case was referred to Ernie Meadows, a fraud investigator employed by the Department. In November 2007, Meadows and Tandy Rose visited the Breeches' home. Rose worked as an Adult Protection Service Investigator for the Department. Meadows and Rose had separate roles in the investigation. Meadows investigated whether the Breeches' benefits were fraudulently obtained. Rose investigated allegations of abuse, neglect, or exploitation of

the elderly.  Specifically, Rose testified that she visited the Breeches' home to determine whether Lois was the victim of abuse, neglect, or exploitation.  During the visit, Rose had a private conversation with Lois regarding Lois's financial circumstances and her living arrangement with Thomas.  (At trial, Rose testified, over Lusher's objection, to what Lois told Rose during that conversation.)

{¶13}  Lusher was also at the home when Meadows and Rose visited.  Meadows spoke with Lusher regarding Meadows' fraud-related concerns.  Shortly after the meeting, the deed to the Breeches' property was transferred from Compassionate Hands back to the Breeches.  Additionally, in December 2007, Lusher prepared an affidavit that was sent to the Department.  In the affidavit, Lusher attempted to explain his actions in obtaining benefits for Thomas and Lois.

{¶14}  As a result of the investigation, the Department officials determined (1) that Thomas was overpaid $1,949 in food stamps and (2) Lois was overpaid $195 in food stamps and $379 in Medicaid benefits.

{¶15}  The state claimed Lusher was required to inform the Department that Thomas and Lois were living together based on the rules governing food stamp assistance.  The state also asserted that the rules required Lusher to provide the Department with information about both grandparents, even though each grandparent applied for benefits individually.  According to the state, the rules required Lusher to do this despite (1) Thomas's designation as "institutionalized" in the Passport Program and (2) Thomas and Lois's unorthodox living arrangement.

{¶16}  In May 2009, a grand jury returned a six-count indictment against Lusher.  For purposes of this appeal, we note that Count One of the indictment charges Lusher

with fifth-degree-felony theft.  The theft charge essentially pertained to all of Lusher's activities in obtaining benefits for Thomas and Lois.  Count Two charges Lusher with fifth-degree-felony falsification.  Count Two pertained solely to Lusher's efforts to obtain benefits for Lois in October 2007.  Count Four of the indictment charges Lusher with fifth-degree-felony telecommunications fraud, and that charge was based on Lusher's December 2007 affidavit.

{¶17}  The case was tried to a jury.  The jury found Lusher guilty of Counts One, Two, and Four, and it found him not guilty of the remaining counts.  Lusher appeals and asserts the following assignments of error: I. "THE TRIAL COURT COMMITTED ERROR WHEN IT PERMITTED THE INTRODUCTION OF TESTIMONIAL STATEMENTS IN VIOLATION OF THE APPELLANT'S RIGHT TO CONFRONTATION GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."  II. "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PERMITTED THE INTRODUCTION OF OTHERWISE INADMISSIBLE HEARSAY IN VIOLATION OF THE OHIO RULES OF EVIDENCE."  III. "THE TRIAL COURT ERRED IN ENTERING JUDGMENT OF CONVICTION IN CONNECTION WITH COUNT I, THEFT, AND COUNT II, FALSIFICATION, BECAUSE, IN COMBINATION, THE JURY INSTRUCTIONS AND VERDICT FORMS WERE INSUFFICIENT TO SUPPORT THE FELONY ENHANCEMENT PROVISIONS FOR THESE OFFENSES."  IV. "THE APPELLANT'S CONVICTION FOR THEFT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE 14TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I,

SECTION 14 OF THE OHIO CONSTITUTION." V. "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHT TO COUNSEL UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION." VI. "THE TRIAL COURT COMMITTED ERROR WHEN IT DENIED THE APPELLANT'S MOTION TO DISMISS BASED ON THE STATE'S FAILURE TO COMPLY WITH OHIO ADMINISTRATIVE CODE §5101:4-8-15." And VII. "THE TRIAL COURT COMMITTED ERROR WHEN IT DENIED THE APPELLANT'S MOTION FOR NEW TRIAL AS UNTIMELY."

II.

{¶18} For ease of analysis, we will consider Lusher's assignments of error out of order. We begin with Lusher's sixth and seventh assignments of error because they are interrelated.

A.

{¶19} In his sixth assignment of error, Lusher argues that the trial court erred when it denied his motion to dismiss based on the state's alleged failure to comply with various provisions of the Ohio Administrative Code. Essentially, Lusher contends that the Ohio Administrative Code provides a statute of limitations for crimes related to improper receipt of food stamp benefits.

{¶20} "[O]ur review of statute of limitations issues involves a mixed question of law and fact." *State v. Stamper*, 4th Dist. No. 05CA21, 2006-Ohio-722, ¶ 30. "Therefore, we accord due deference to a trial court's findings of fact if supported by

competent, credible evidence[.]" *Id.* However, "[w]e review the legal issues de novo[.]" *State v. Smith*, 4th Dist. No. 10CA3148, 2011-Ohio-602, ¶ 18.

**{¶21}** Prior to trial, Lusher moved to dismiss Count 5 of the indictment based on certain provisions of the Ohio Administrative Code governing food stamp benefits. (After trial, Lusher attempted to expand his statute-of-limitations argument to include additional counts. We will address this below in our analysis of Lusher's motion for a new trial.) Count 5 charged Lusher with violating R.C. 2913.46(B) (prohibiting the illegal use of food stamps). Lusher argued that the Administrative Code required the Department to refer its allegations of Lusher's improper receipt of food stamp benefits to the prosecutor within a certain time period. According to Lusher, the Department failed to refer his case to the prosecutor within the required time period. As a result, Lusher claimed that Count 5 should have been dismissed because it related to the use of food stamps.

**{¶22}** We need not analyze the merits of Lusher's statute-of-limitations argument because the issue is moot. The jury returned a "not guilty" verdict for Count 5. Consequently, Lusher's statute-of-limitations argument based on the Ohio Administrative Code is moot. *See generally State v. Garcia*, 3d Dist. No. 12-11-07, 2012-Ohio-1795, ¶ 21 ("[E]ven if it would have been error to allow K.F.'s testimony, the issue was moot because the jury found Garcia not guilty of the single count involving K.F. and his testimony.").

**{¶23}** Accordingly, we overrule Lusher's sixth assignment of error.

B.

{¶24} In Lusher's seventh assignment of error, Lusher argues that the trial court erred when it denied his motion for a new trial as untimely.

{¶25} "Generally, a decision on a motion for a new trial is within the discretion of the trial court." *State v. Ward*, 4th Dist. No. 05CA13, 2007-Ohio-2531, ¶ 41, citing *State v. Scheibel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus. Accordingly, we will not reverse a trial court's decision on a motion for a new trial absent an abuse of discretion. *State v. Nichols*, 4th Dist. No. 11CA912, 2012-Ohio-1608, ¶ 61. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶26} As indicated above, Lusher filed a pretrial motion to dismiss based on time limitations found in the Ohio Administrative Code. During a hearing on the motion, both Lusher and the state agreed that the motion to dismiss pertained only to Count 5 of the indictment. The jury later found Lusher not guilty of Count 5.

{¶27} After trial, Lusher filed a motion for a new trial. In the motion, Lusher argued that the state's evidence for all of Lusher's convictions pertained to the improper receipt of food stamp benefits. As a result, Lusher asserted that the food-stamp-related time limitations in the Administrative Code applied to all of the counts for which Lusher was convicted, not just Count 5. The trial court, however, determined that Lusher's motion for a new trial was untimely.

{¶28} On appeal, Lusher contends that the trial court did not properly calculate the time period to file his motion for a new trial. Thus, Lusher argues that the trial court erred when it denied his motion for a new trial as untimely.

{¶29} The arguments in Lusher's motion for a new trial mirror the statute-of-limitations arguments Lusher made regarding the dismissal of Count 5. But Lusher cannot expand his statute-of-limitations arguments beyond Count 5 because he has waived those arguments. Crim.R. 12(C)(1) provides that "[t]he following *must be raised before trial*: [d]efenses and objections based on defects in the institution of the prosecution[.]" (Emphasis added.) Additionally, Crim.R. 12(H) provides that the "[f]ailure by the defendant to raise defenses or objections or to make requests that must be made prior to trial * * * shall constitute waiver of the defenses or objections[.]" Thus, "[i]n order to challenge a charged offense on statute of limitations grounds * * *, a defendant must file a motion to dismiss prior to trial." *State v. Grant*, 12th Dist. No. CA2003-05-114, 2004-Ohio-2810, ¶ 9. And "[f]ailure to file a motion to dismiss under Crim.R. 12(C) waives the statute of limitations defense." *Id.* Here, by limiting his statute-of-limitations arguments to Count 5 in his pretrial motion, Lusher waived those arguments with respect to the other counts in the indictment.

{¶30} Although Crim.R. 12(H) provides that "the court for good cause shown may grant relief from the waiver[,]" Lusher has not shown the requisite good cause for relief from waiver. Considering the nature of the charges against Lusher, he should have been aware, prior to trial, that the state might include evidence of improper receipt of food stamps to support the theft, falsification, and telecommunications-fraud charges. Lusher, however, failed to argue that the theft, falsification, and telecommunications-fraud charges were also subject to the limitations period in the Ohio Administrative Code. As a result, Lusher waived those arguments.

{¶31} Because Lusher waived the arguments he made in his motion for a new trial, any error in denying the motion as untimely would be harmless error. *See* Crim.R. 52(A). Accordingly, we overrule Lusher's seventh assignment of error.

III.

{¶32} In his third assignment of error, Lusher argues that there was insufficient evidence to convict him of theft.

{¶33} When reviewing a case to determine if the record contains sufficient evidence to support a criminal conviction, we must "'examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502, ¶ 33, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. *See also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶34} The sufficiency-of-the-evidence test "raises a question of law and does not allow us to weigh the evidence." *Smith*, 2007-Ohio-502, ¶ 34, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Instead, the sufficiency-of-the-evidence test "'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Smith*, 2007-Ohio-502, ¶ 34, quoting *Jackson* at 319. This court will "reserve the issues of the weight given to the evidence and the

credibility of witnesses for the trier of fact." *Id.*, citing *State v. Thomas*, 70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356 (1982); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶35} Initially, we must note some discrepancies in the theft charge against Lusher. Count One of the indictment charges as follows:

> [Lusher] did: By deception with the purpose to deprive
>
> the owner of property or services, knowingly obtained
>
> or exerted control over either the property or services
>
> beyond the scope of the express or implied consent of
>
> the owner or person authorized to give consent In
>
> [sic] violation of Ohio Revised Code, Title 29, Section
>
> 2913.02(A)(2)(3), and against the peace and dignity
>
> of the State of Ohio, a felony of the fifth degree.

{¶36} The Ohio Revised Code does not contain a "Section 2913.02(A)(2)(3)." R.C. 2913.02(A)(2) provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent[.]" And R.C. 2913.02(A)(3) provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]"

{¶37} Thus, the indictment charges Lusher with a nonexistent, hybrid offense that combined the elements of theft beyond the scope of consent (i.e., R.C. 2913.02(A)(2)) and theft by deception (i.e., R.C. 2913.02(A)(3)).

{¶38}  The state appeared to clarify the discrepancy in its bill of particulars. Regarding Count One, the state's bill of particulars states as follows: "Brandon Lusher * * * did knowingly obtain or exert control over property or services with the purpose to deprive the owner by deception: to wit: theft.  This is in violation of Ohio Revised Code Section 2913.02(A)(3), entitled 'Theft', a felony of the fifth degree[.]"  (Underlining sic.) Bill of Particulars at 1.  Thus, the bill of particulars indicates that the state intended to proceed under a theft-by-deception theory.

{¶39}  The trial court's jury instruction for Count One conflicted with the charge specified in the state's bill of particulars.  The instructions are consistent with a theft-beyond-the-scope-of-express-or-implied-consent theory, not a theft-by-deception theory.  The trial court instructed the jury as follows:

> Now Count 1, theft.  The defendant is charged with
> theft.  Before you can find the defendant guilty you
> must find beyond a reasonable doubt that on or about
> the 1st day of March 2006 to on or about the 31st day
> of December 2007 and in Gallia County, Ohio the
> defendant with purpose to deprive the owner of
> property or services knowingly obtained or exerted
> control over, over either the property or services
> beyond the scope of the expressed or implied consent
> of the owners or person authorized to give consent.
> Trial Tr. at 559.

**{¶40}** Thus, the trial court's instruction tracks the language of R.C. 2913.02(A)(2), not R.C. 2913.029(A)(3) as specified in the bill of particulars. Furthermore, "'a jury cannot convict on an offense for which it was never instructed.'" *State v. Dobbins*, 4th Dist. No. 11CA6, 2011-Ohio-6777, ¶ 23, quoting *State v. Chamblin*, 4th Dist. No. 02CA753, 2004-Ohio-2252, ¶ 14. Consequently, because the trial court instructed the jury on the elements of R.C. 2913.02(A)(2) only, we will consider whether the state presented sufficient evidence to convict Lusher of that offense (i.e., theft beyond the scope of express or implied consent).

**{¶41}** Lusher contends that the state presented no evidence regarding the scope of express or implied consent. We agree. As suggested by the bill of particulars, the state presented evidence consistent with a theft by deception theory under R.C. 2913.02(A)(3). That is, the state attempted to show that Lusher deceived the state by misrepresenting aspects of Thomas and Lois's living situation and financial circumstances in an effort to obtain various benefits.

**{¶42}** Nowhere does the state present any evidence regarding the scope of express or implied consent for Lusher to obtain or exert control over the benefits from the state. On this point, the state's only argument is that "[t]he testimony of Judy Lyall (Tr. 51-91), Beth Moore (Tr. 113-172), Cindy Kuhn (Tr. 217-248), Tandy Rose (Tr. 285-298), and Erine [sic] Meadows (Tr. 301-350) all clearly illustrate how the rules of the various programs establish the scope of the consent given by the State of Ohio to the Appellant." Appellee's Brief at 16. According to the state, "the * * * testimony clearly illustrates how the Appellant exceeded the scope of the consent of the State of Ohio by engaging in his various frauds on the food stamp and Medicaid program." *Id.*

{¶43} After reviewing the record, we find that the state did not present evidence of the scope of express or implied consent necessary to convict Lusher of violating R.C. 2913.02(A)(3). Interpreting the evidence in a light most favorable to the state, we could possibly construe the state's evidence to show that Lusher obtained or exerted control over property or services "[w]*ithout the consent* of the owner or person authorized to give consent." (Emphasis added.) R.C. 2913.02(A)(1). The state, however, did not indict Lusher for violating R.C. 2913.02(A)(1). Additionally, the trial court did not instruct the jury on such a charge.

{¶44} Because the state failed to present evidence regarding the scope of express or implied consent, it did not prove all the essential elements of the theft charge against Lusher beyond a reasonable doubt. Consequently, there was insufficient evidence to convict Lusher of theft in violation of R.C. 2913.02(A)(2).

{¶45} Accordingly, we sustain Lusher's third assignment of error.

IV.

{¶46} Next, we consider Lusher's second assignment of error. In his second assignment of error, Lusher argues that the trial court erred by admitting Rose's testimony of Lois's hearsay statements.

{¶47} As stated above, Rose and Lois had a conversation when Rose and Meadows visited the Breeches' home. During that conversation, Rose and Lois discussed Lois's financial circumstances and her living arrangement with Thomas. Rose testified as follows over Lusher's objection:[1]

---

[1] Lusher objected on hearsay grounds. The state responded that "[Rose] is in her investigation as an [Adult Protection Services] worker. She's determining factors." Trial

[Rose]: When [Meadows] and Randy [Breech

(hereinafter Randy)[2]] and Brandon [Lusher] were still

in the room we had discussed with Lois if she was on

assistance or not and she didn't know that[.] * * * Lois

said that she did not know and we discussed the

property and you know she wasn't aware of any

property.  And Lois did say I don't handle any of my

finances Tandy[,] I let Brandon [Lusher] do all of that.

* * *

[State]: As [an Adult Protection Services] worker and

in determining and talking with Lois were you able to

determine if she knew whether or not her property

had been transferred?

[Rose]: She did not know.

---

Tr. at 294.  The trial court responded, "I agree, overrule."  *Id.*  Lusher also requested a continuing objection regarding Rose's testimony.

Additionally, we note that, in his first assignment of error, Lusher argues that admission of Rose's testimony violated Lusher's rights under the Confrontation Clause because Lois was not available for cross-examination.  Lusher, however, objected to Rose's testimony on hearsay grounds only.  He did not raise the Confrontation Clause issue. Thus, Lusher arguably waived that issue for all but plain error.  *See State v. Maple*, 9th Dist. No. 25331, 2011-Ohio-1516, ¶ 23; *State v. Hall*, 5th Dist. 05 CA 35, 2006-Ohio-2160, ¶ 26, fn. 1; *but see generally State v. Adams*, 43 Ohio St.3d 67, 69, 538 N.E.2d 1025 (1989) ("'It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights and that we "do not presume acquiescence in the loss of fundamental rights."'"), quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).  In any event, considering our resolution of Lusher's second assignment of error, Lusher's Confrontation Clause arguments are moot.

[2] Randy Breech is Thomas and Lois's son and Lusher's uncle.

[State]: * * * And did it appear that Lois and Tom were married?

[Rose]: Yes.

[State]: * * * [W]ere they acting as a couple in your opinion?

[Rose]: I mean she talked about the care that Tom needs and you know their doctor's appointments that they go to.  And I did ask her had they been separated and did she ever live in another state and she said no."  Trial Tr. 294-295.

**{¶48}** Lusher contends that Rose's testimony recounting Lois's statements amounted to hearsay testimony.  Lusher also argues that no exception to the hearsay rule applies.

**{¶49}** Generally, we will review the trial court's decision to admit or exclude relevant evidence under an abuse of discretion standard.  *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.  However, "[a] trial court's discretion to admit or exclude relevant evidence does not include the discretion to admit hearsay; Evid.R. 802 mandates the exclusion of hearsay unless any exceptions apply." *In re Lane*, 4th Dist. No. 02CA61, 2003-Ohio-3755, ¶ 11, citing *State v. Barney*, 4th Dist. No. 97CA12, 1999 WL 378755, *4 (June 7, 1999).  Thus, we review de novo whether Lois's statements to Rose constituted hearsay.  *Id.  Accord State v. Sorrels*, 71 Ohio App.3d 162, 165, 593 N.E.2d 313 (1st Dist.1991).

{¶50} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶51} We conclude that Lois's statements constituted hearsay. The allegations against Lusher focused primarily on Lusher's alleged misrepresentations regarding Lois and Thomas's living situation and financial affairs. Lois's statements were pertinent to the state's case against Lusher. Lois made statements to Rose indicating (1) that Lusher handled Lois's finances, (2) that Lois and Thomas were never separated, (3) that Lois did not know her property had been transferred to Compassionate Hands, and (4) that Lois never lived in a different state (as Lusher claimed in his December 2007 affidavit). The state presented Lois's statements as statements of fact to support the charges against Lusher.

{¶52} Moreover, the state's extensive use of Lois's statements to impeach Lusher on cross-examination demonstrates that the state was using the statements for the truth of the matter asserted. During Lusher's cross-examination, the following exchanges ensued:[3]

> [State:] And do you remember Tandy testifying to the
> fact that your grandmother stated that she never lived
> in West Virginia?
> [Lusher:] She thought, according to what my
> grandmother informed me, she thought Tandy was

---

[3] We note that, during trial, the parties often referred to Rose by her first name, "Tandy."

asking * * * if she knew my grandfather lived in West Virginia.

[State:] No, no, no, no, that's not the question. You've got to answer my questions. Do you remember Tandy Rose testifying that your grandmother never lived in West Virginia?

[Lusher:] Yes.

[State:] Okay. Do you also remember Tandy testifying that your grandmother did not know that her property was transferred?

[Lusher:] I remember her testifying to that, yes.

* * *

[State:] Okay. Do you also remember Tandy testifying to the fact that your grandmother testi… or your grandmother told her that she pays her own bills?

[Lusher:] Actually I believe Tandy said that my grandmother told her that she gave me the money. * * * To pay the bills.

[State:] But she's still paying you to pay her bills, correct?

[Lusher:] Yes.

[State:] Okay.  There's no reference to your grandmother paying Compassionate Hands, is that correct?

[Lusher:] Where, when, what are you talking about?  In reference to when?

[State:] In Tandy's testimony she never said that your grandmother said I pay this company who owns my house?

[Lusher:] I don't recall her saying that during her testimony, no.  Trial Tr. 497-499.

{¶53}  Later during cross-examination, Lusher stated that his grandmother had temporarily lived in a camper in Huntington, West Virginia, because she was seeing multiple physicians in that state.  (Lusher also included a similar assertion in his December 2007 affidavit, which served as the basis for the telecommunications-fraud conviction.)  Lusher testified as follows: "[Lois] started losing several teeth and I knew that Ohio's Medicaid dental benefits tended to cover more services than West Virginia. * * * So we no longer used the camper and therefore cancelled West Virginia coverage." *Id.* at 505.  The state then referenced Lois's hearsay statements as follows:

[State:] Okay.  So when your grandmother stated that she never lived in West Virginia she was lying?

[Lusher:] Uh, as I said earlier she understood the question to be from Tandy whether or…

[State:] Okay, you can't answer the question how you think your grandma thought the question is. You can only answer it from what you heard today. You heard from Tandy that she said she never lived in West Virginia, correct?

[Lusher:] I heard differently from my grandmother about what * * * she understood the question to be though.

[State:] Okay. But today in Court you heard from Tandy and Tandy said she told her that she never lived in West Virginia.

[Lusher:] That's what Tandy said.

[State:] Okay. And you would agree with me that the statement that your grandmother made conflicts with what's written in this affidavit?

[Lusher:] No, I do not agree with that. I [ ] would agree that what Tandy said my grandmother said conflicts with this, but I would not agree that what my grandmother said conflicts with this.

[State:] Okay. Well you're asked what Tandy said?

[Lusher:] I would agree that what Tandy said my grandmother said * * * [c]onflicts with this, yes. *Id.* 505-507.

{¶54}  The state also referenced Lois's hearsay statements during closing and rebuttal arguments.  When arguing that Lusher was guilty of falsification, the state told the jury, "You heard that Lois had no idea that this transfer of deed had ever taken place and that Brandon was the one sending these [sic] information to Compassionate Hands and that's how you get to falsification."  *Id.* at 529.  During the state's rebuttal argument, the state argued that one of the misrepresentations that Lusher made in the affidavit pertained to Lusher's claim that Lois temporarily lived in West Virginia.  Specifically, the state told the jury as follows: "The fact that [Lusher's] grandmother was living in West Virginia, his grandmother told a caseworker, I never lived in West Virginia."  *Id.* at 551.

{¶55}  Thus, the record demonstrates that the state used Lois's statements for the truth of the matter asserted.  Consequently, Lois's statements to Rose constituted hearsay.

{¶56}  The state argues that Rose's testimony about Lois's statements did not constitute hearsay.  The state asserts that Lois's statements "were not offered to prove the truth of the matter asserted."  Appellee's Brief at 10.  Instead, the state argues that "[t]he statements were only used to illustrate the actions taken by Ms. Rose as an Adult Protection Service Investigator."  *Id.*  The state contends that "at no times [sic] did the State or Ms. Rose state or imply what was being told to Ms. Rose was the truth and or factual."  *Id.*

{¶57}  We disagree.  Initially, we note that "although statements that are offered to explain an officer's conduct are not hearsay, 'the potential for abuse in admitting such statements is great where the purpose is merely to explain an officer's conduct during the course of an investigation.'"  *State v. Wilson*, 5th Dist. No. 09-CA-44, 2010-Ohio-

1394, ¶ 20, quoting *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987). "Given the potential for abuse, * * * the conduct to be explained must be relevant, equivocal, and contemporaneous with the statements." *Id.* at ¶ 21.

{¶58} Here, we conclude that Rose's actions as an Adult Protection Services Investigator had little, if any, relevance to the issues to be decided at trial. Rose testified that she visited the Breeches' home to determine whether Lois was the victim of abuse, neglect, or exploitation. Thus, her actions as an Adult Protection Services Investigator showed *why* she accompanied Meadows to the Breeches' home. However, whether Lois was the victim of abuse, neglect, or exploitation was not an issue that had to be decided at trial. Moreover, the state did not use Lois's statements to Rose to show anything with respect to neglect, abuse, or exploitation. Instead, the state used Lois's statements to prove that Lusher was guilty of the various charges he faced.

{¶59} Additionally, Rose's testimony indicates that she quickly determined that Lois was not the victim of abuse, neglect, or exploitation. For example, the state asked Rose if she was able to determine "if Lois was okay[,]" and Rose responded, "Yes, she was, she was great." Trial Tr. at 292. When asked how she determined that, Rose responded as follows: "There's questions that you can give and then the expert evaluation. * * * [Y]ou didn't even have to do that with Lois, I mean she knew me as soon as she seen me and I've not seen her for several years." *Id.* Therefore, Lois's statements to Rose were not necessary to explain Rose's actions as an Adult Protection Services Investigator. (Moreover, Rose had very little involvement with Lois's case following her visit with Meadows. The only additional involvement Rose testified to was

a telephone conversation with Randy regarding whether the Breeches' property had been transferred back into the Breeches' name.)

**{¶60}** As stated above, the state used Lois's statements for the truth of the matter asserted. That is, the state used Lois's statements to demonstrate (1) that Lois informed Rose of various facts about Lois and Thomas's life and (2) that Lusher misrepresented those facts to the state in order to obtain benefits for Lois and Thomas. Lois's statements pertained to the central issues in the case against Lusher. And contrary to the state's assertion, Rose's testimony does imply that Lois's statements were factual. Indeed, the state's use of Rose's testimony implied that the jury should treat the Lois's statements as statements of fact.

**{¶61}** Therefore, for all the reasons stated above, we conclude that Lois's statements to Rose constituted hearsay. And because no exception to the hearsay rule applied, the trial court erred by admitting Rose's testimony regarding her conversation with Lois. *See* Evid.R. 802.

**{¶62}** Next, we must determine whether the error in admitting Rose's testimony amounted to harmless error. Crim.R. 52 provides as follows:

> (A) Harmless error
>
> Any error, defect, irregularity, or variance which does
>
> not affect substantial rights shall be disregarded.
>
> (B) Plain error
>
> Plain errors or defects affecting substantial rights may
>
> be noticed although they were not brought to the
>
> attention of the court.

**{¶63}** As stated, Lusher objected to the admission of Rose's testimony. The Supreme Court of Ohio has explained the significance of a defendant's objection on a harmless error analysis as follows:

> [I]f the defendant has objected to an error in the trial court, an appellate court reviews the error under the "harmless error" standard in Crim.R. 52(A)[.] * * * Under that rule, the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant. * * * An appellate court must reverse a conviction if the government does not satisfy this burden; unlike Crim.R. 52(B), Crim.R. 52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error. (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14-15.

**{¶64}** Thus, we must determine whether the state has demonstrated that the error was harmless error. "We apply nonconstitutional harmless-error analysis to evidentiary errors." *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 38, citing *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 88. "A nonconstitutional error is harmless when there is substantial other evidence to support the guilty verdict." *Id.*, citing *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994).

**{¶65}**  The state used Lois's hearsay statements to support Lusher's falsification and telecommunications-fraud convictions.  Rose's testimony and the arguments of the prosecutor detailed above demonstrate that the state used Lois's statements to show that Lusher knowingly made false statements with the purpose of securing a benefit from the state.  *See* R.C. 2921.13(A)(4) (falsification).  Additionally, the state also used Lois's statements to discredit Lusher's December 2007 affidavit and in turn, to show that Lusher used the affidavit to further his scheme to defraud the state of benefits.  *See* R.C. 2913.05(A) (telecommunications fraud).

**{¶66}**  Consequently, the state must show that there is substantial other evidence to support Lusher's falsification and telecommunications fraud convictions.  (Based on our resolution of Lusher's third assignment of error, we need not analyze whether there was substantial other evidence to support Lusher's theft conviction.)

**{¶67}**  In its Appellee's Brief, the state offers no argument to show that the error was harmless.  Instead, the state focuses solely on its contention that Rose's testimony was not hearsay because it was not offered for the truth of the matter asserted.  As shown above, however, we have concluded that the testimony was hearsay.

**{¶68}**  Based on our review of the record, we cannot conclude that there was substantial other evidence to support Lusher's falsification and telecommunications fraud convictions.  We note that Lois's hearsay statements were not duplicative of other testimony at trial.  Lois's hearsay statements constituted the only evidence of Lois's understanding of her living arrangement with Thomas as well as Lois's awareness of the role Compassionate Hands, or any other company, played with respect to her finances.

**{¶69}** Additionally, the interpretation of much of the evidence hinged on Lusher's credibility as compared to the credibility of the state's witnesses. Considering the damage to Lusher's credibility when the state extensively used Lois's statements to impeach Lusher on cross-examination, we cannot conclude that there was substantial other evidence to support Lusher's falsification and telecommunications-fraud convictions. *See generally State v. Presley*, 10th Dist. No. 02AP-1354, 2003-Ohio-6069, ¶ 34 ("The determinative issue in this case was credibility[.] * * * The effect of permitting the hearsay evidence offered by Fullen was to bolster Josie's testimony and her credibility. Moreover, the effect of this error was not diminished by the fact that Josie testified at trial and was subject to cross-examination. * * * In considering the effect of the error at trial in a case where the issue of credibility was determinative, we cannot conclude that such error was harmless beyond a reasonable doubt.").

**{¶70}** Lois's hearsay statements directly supported the falsification and telecommunications fraud charges against Lusher. The state relied on these statements (1) by introducing them through Rose's direct examination, (2) by impeaching Lusher with the hearsay statements on cross-examination, and (3) by referencing the hearsay statements during closing and rebuttal arguments. Moreover, the state has not advanced an argument to demonstrate that the error is harmless. Consequently, we conclude that the state has failed to satisfy its burden of demonstrating harmless error. Thus, the error affected Lusher's substantial rights. As a result, we must vacate Lusher's falsification and telecommunications-fraud convictions. *See Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 15 ("Crim.R.

52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error.").

**{¶71}** Accordingly, we sustain Lusher's second assignment of error.

V.

**{¶72}** In conclusion, we overrule Lusher's sixth and seventh assignments of error. We sustain Lusher's third assignment of error, and we vacate Lusher's theft conviction for Count One of the indictment. Because the state failed to present sufficient evidence to support Lusher's theft conviction, Lusher cannot be retried on this charge. *See State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997). Additionally, we sustain Lusher's second assignment of error, and we vacate Lusher's falsification and telecommunications fraud convictions based on Counts Two and Four of the indictment respectively. Because Lusher's remaining assignments of error are moot, we decline to address them. *See* App.R. 12(A)(1)(c).

**{¶73}** Accordingly, we reverse the judgment of the trial court, and we remand this case to the trial court for further proceedings consistent with this opinion.

**JUDGMENT REVERSED
AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT REVERSED and the CAUSE BE REMANDED to the trial court for further proceedings consistent with this opinion.  Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, J.:  Concurs in Judgment & Opinion.
Abele, P.J.:     Concurs in Judgment & Opinion as to Assignments of Error 3, 6, & 7.
                 (Other Assignment of Error rendered moot).
                 Concurs in Judgment Only as to Assignment of Error 2.


For the Court


BY:_____
     Roger L. Kline, Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**